646 So.2d 215 (1994)
3299 N. FEDERAL HIGHWAY, INC. d/b/a Crazy Horse Too, et al., Appellants,
v.
BOARD OF COUNTY COMMISSIONERS OF BROWARD COUNTY, Florida; Broward County, Florida, a political subdivision; Ron Cochran, Sheriff; B. Jack Osterholt, Administrator, Broward County; and Michael Satz, Broward County, Florida, Appellees.
Nos. 93-2888, 93-2898.
District Court of Appeal of Florida, Fourth District.
September 9, 1994.
Opinion Denying Rehearing and Certifying Question November 9, 1994.
Opinion Clarifying Decision November 29, 1994.
*219 Charles L. Curtis of Doumar, Curtis, Cross, Laystrom & Perloff, Fort Lauderdale, for appellant-3299 N. Federal Highway, Inc.
Luke Charles Lirot, Clearwater, for appellant-Intern. Eateries of America, Inc.
John J. Copelan, Jr., County Atty., Anthony C. Musto, and Christine M. Duigan, Asst. County Attys., Fort Lauderdale, for appellee-Broward County.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Marc E. Brandes, Asst. Atty. Gen., Hollywood, for appellee-Michael Satz.
PER CURIAM.
This is an appeal from the denial of a motion for temporary injunction. It was sought by two night clubs which feature nude dancing and three dancers from one of the clubs in an action against Broward County to enjoin it from enforcing its newly adopted "Broward County Adult Entertainment Code." We affirm the denial and vacate the stay of enforcement of the ordinance which we had previously entered, pending our disposition of the matter.
The initial brief of one club, 3299, raises two issues, one of which is whether consolidation *220 would adversely affect the time to be given the merits. It did not. The other issue it raises is whether the hearing in question denied appellant due process. We conclude it did not. The initial brief of the other club, International, and its three dancers, contrary to Florida Rule of Appellate Procedure 9.210(b)(5), contains a laundry list of eleven separate words, phrases or sentences which are shorthand references to doctrines of constitutional law, instead of stating the issues. Notwithstanding this omission, we understood appellants' arguments and have rejected them all.
An appellant who challenges the denial of a temporary injunction has a heavy burden. Reinhold Constr., Inc. v. City Council, Vero Beach, 429 So.2d 699 (Fla. 4th DCA 1983). The trial court's ruling on a motion for temporary injunction is presumed to be correct and will not be overturned absent a clear abuse of discretion. South Florida Limousines, Inc. v. Broward County Aviation Dep't, 512 So.2d 1059, 1062 (Fla. 4th DCA 1987).
In order to have been entitled to relief, appellants must have demonstrated in the proceedings below that they met the following requirements for issuance of a temporary injunction:
1. The movant will suffer irreparable harm unless the status quo is maintained;
2. There is no adequate remedy at law;
3. The movant has a clear legal right to the relief requested; and
4. A temporary injunction will serve the public interest.
South Florida Limousines, 512 So.2d at 1061. In our view, appellants have not made their case on any of the above criteria. We opt to discuss only two.

I
Appellants' claims of economic losses, even if proven, do not constitute irreparable harm because the amounts lost or expended can be calculated after the fact and be fully compensated by money damages. South Florida Limousines, 512 So.2d at 1062; Tamiami Trail Tours, Inc. v. Greyhound Lines, Inc., 212 So.2d 365, 366 (Fla. 4th DCA 1968).
3299 argues in its initial brief that it offered evidence that the value of these business losses could not be determined, seeking application of the principle discussed in Liza Danielle, Inc. v. Jamko, Inc., 408 So.2d 735, 738-39 (Fla. 3d DCA 1982), that where it is difficult or impossible to measure the dollar amount of the potential loss, money damages are inadequate and the harm is deemed irreparable. The only evidence to which it points in support of this theory are the affidavits of two of its dancers who allege that they intend to quit if customers are not permitted to have physical contact with the garters that they wear on their thighs for the purpose of collecting tips, along with similar allegations contained in its verified complaint that the dancers will not be able to earn a living if they cannot accept tips.
We find three reasons to reject their argument  any of which is sufficient to do so. First, this evidence does not demonstrate that this potential loss cannot be calculated. Second, the loss of tips would be suffered by non-parties, not appellant 3299 (none of the 3299 dancers were parties to the action in the trial court). While the rights of third parties in a proper case may be asserted by a party who alleges a chilling effect on constitutionally protected speech or expression, the rights asserted by 3299 on behalf of its dancers are purely economic. ATS Melbourne, Inc. v. City of Melbourne, 475 So.2d 1257, 1260 (Fla. 5th DCA 1985) (zoning case), citing, Young v. American Mini Theaters, 427 U.S. 50, 60, 96 S.Ct. 2440, 2447, 49 L.Ed.2d 310, 320 (1976). Finally, the Code does not prohibit tipping, provided that the act of tipping does not involve a customer's either entering the buffer zone around the stage or touching those parts of the dancer's body for which employee-customer contact is prohibited.
3299 argues that the possibility of criminal prosecution under the terms of the ordinance constitutes irreparable harm. This argument was rejected in Palenzuela v. Dade County, 486 So.2d 12 (Fla. 3d DCA 1986). The third district reasoned that the *221 party seeking the injunction would have an adequate remedy at law in the event that criminal charges were brought, since the legal arguments that were raised in the motion for injunction could be argued in defense of the prosecution for the ordinance violation. Id. at 13, citing, Louisville & N.R. Co. v. Railroad Comm'rs, 63 Fla. 491, 58 So. 543 (1912). We agree.[1]
The International dancers assert the loss of their right to artistic expression, while International argues that it will be unable to participate commercially in its dancers' art. The United States Supreme Court has held that while the expressive content of nude dancing is slight, it may be entitled to some degree of first amendment protection under certain circumstances. Barnes v. Glen Theatre, Inc., 501 U.S. 560, 565-66, 111 S.Ct. 2456, 2460, 115 L.Ed.2d 504, 511 (1991). See also Lawrence v. Knowles, 533 So.2d 796, 797 (Fla. 4th DCA 1988) (Glickstein, J., concurring specially).
However, when such artistic activity is merely incidental to a commercial endeavor, it may not be entitled to the protection that it would otherwise be guaranteed. City of Miami Springs v. J.J.T., Inc., 437 So.2d 200, 206 (Fla. 3d DCA 1983). International's claim to the right to "engage in the commercial manifestations of freedom of expression" is therefore particularly weak.
It should be remembered that the ordinance does not prohibit nude dancing per se.[2] It restricts only the extent of physical contact with and proximity to patrons that occurs in the course of such public or private performances. None of appellants, either the corporations or the dancers, asserted in the proceedings before the trial court that physical contact with patrons is a necessary or even an integral part of their art.[3]
Under the principles set forth above, the performers and to a lesser extent the business owners do have a constitutionally protected right to freedom of expression which is implicated in nude or "adult" dancing. The County acknowledged in the ordinance itself that increasing the distance between the performer and the audience may dilute the message of the performance. At least two federal courts have recognized that this type of regulation may impair constitutionally-protected expression, but both courts concluded that they placed only slight burdens upon first amendment rights which were overcome by countervailing public interests. Kev, Inc. v. Kitsap County, 793 F.2d 1053, 1061-62 (9th Cir.1986); T-Marc, Inc. v. Pinellas County, 804 F. Supp. 1500, 1506-07 (M.D.Fla. 1992) (finding no demonstration of likelihood of prevailing even when first amendment issues were argued).
While it appears that first amendment rights may well be impaired, at least to some extent, by restrictions on a performer's ability to include members of the audience in her act or to maintain a level of physical closeness with her audience, we conclude that appellants have not demonstrated (or even alleged) that their rights to freedom of artistic expression include physical contact with customers, the minimization of the distance from the audience, or are otherwise dependent upon factors that are restricted or regulated *222 by the Code. They have alleged only that the restrictions will have an economic impact (loss of business and tips).
While appellants have sufficiently identified first amendment rights which cannot be valued monetarily, they have failed to demonstrate that the Code poses a threat of harm to those rights, therefore they have not met the first prong of the South Florida Limousines test  that they will suffer irreparable harm if the County is allowed to enforce the Code. 512 So.2d at 1061.

II
In order to meet the "clear legal right" test, the proponent of the injunction must demonstrate that it has a substantial likelihood of success on the merits. Reinhold. Appellants argue that the Code is unenforceable because it is unconstitutional and/or because it was improperly adopted. Because this court is reviewing the denial of a preliminary injunction, not a final order, the question is not whether the ordinance is unconstitutional or otherwise unlawful, but whether appellants established that they were likely to prevail on one or more of their claims that the ordinance is unenforceable. Doran v. Salem Inn, Inc., 422 U.S. 922, 932, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648, 659-60 (1975).[4]
As for its claim of estoppel, 3299 failed to demonstrate that it was reasonable for it to rely upon a county attorney's interpretation of an existing ordinance as a guarantee that the County Commission would not change the law in the future. See Barefield v. Davis, 251 So.2d 699, 701 (Fla. 1st DCA 1971).
Appellants argue that the ordinance was either a zoning law or a land-use ordinance within the meaning of section 125.66, Florida Statutes (1993); so the County was required to comply with the notice and public hearing requirements of that statute. The County did not comply, but argues that the ordinance was not subject to those requirements. The trial court found that it was not a zoning or land-use ordinance, with which finding we agree.
In T.J.R. Holding Co. v. Alachua County, 617 So.2d 798 (Fla. 1st DCA 1993), the ordinance clearly regulated only conduct, prohibiting nudity and sexual conduct in establishments which served alcohol. The first district concluded that it did not affect the owner's use of the land and so was properly adopted without the formalities required for a land-use ordinance.
Daytona Leisure Corp. v. Daytona Beach, 539 So.2d 597 (Fla. 5th DCA 1989), involved a classic zoning ordinance which prohibited the sale of alcohol in designated areas. The fifth district concluded that the failure to properly notice the ordinance prior to adoption rendered it unenforceable.
Ordinance No. 93-18 falls somewhere in the middle of the above cases. While it regulates activities that are quite clearly "conduct"  touching, lap dancing, distances between performers and patrons  it also requires that affected businesses meet structural requirements  partitions, width of doorways, distance between seats and stage, etc. The statutory definition of what constitutes a "land-use regulation" does not answer the question of whether the fact that the ordinance requires these relatively minor changes in the interior of the building makes the ordinance a "land-use regulation." § 125.66(6), Fla. Stat. (ordinances that "affect the use of land") and § 163.3164(11), Fla. Stat. ("use that is permitted or permissible on the land").
Although there is no clear authority on the issue, appellants had the burden of proof at the trial level and there is a presumption of correctness which attaches to the trial court's determination that the ordinance is not a land-use regulation.[5]
*223 While T.J.R. Holding indicates that the conduct portions of the Broward County ordinance can stand even though the section 125.66(6) requirements were not met,[6] it does not answer the question of whether those portions that regulate the interior structure of buildings can stand. There is some authority available on this question, but it is merely persuasive rather than controlling.
A Senate Staff Analysis report which was prepared on CS/SB 358, the companion bill to CS/HB 1997 (which later was passed as amended and codified as chapter 90-152), concluded that amendment was necessary to give the courts some legislative direction in these cases:
Confusion has arisen over the propriety of advertisements for ordinances which affect the use of land, such as land development regulations, but do not actually rezone property. Case law in Florida, City of Sanibel v. Buntrock, 409 So.2d 1073 ([Fla.] 2d DCA 1982 [sic 1981]) [rev. denied, 417 So.2d 328 (Fla. 1982)], construes any ordinance which affects the use of land to be a zoning ordinance... .
Senate Staff Analysis & Economic Impact Statement, CS/SB 358 (April 11, 1990).[7] In City of Sanibel v. Buntrock, 409 So.2d 1073 (Fla. 2d DCA 1981), rev. denied, 417 So.2d 328 (Fla. 1982), the second district concluded that the city was required to comply with section 166.041 (the statute which governs the enactment of municipal zoning ordinances, not county ordinances which are governed by section 125.66) before it could pass an emergency one year moratorium on building permits. The court concluded that the temporary prohibition against further building constituted "a substantial restriction upon land use" which required that the city follow the same formalities prescribed for the enactment of a municipal zoning ordinance. Id. at 1075 (emphasis supplied).
The staff reports on the bill which passed (HB 1997) are of less help. The final report notes that the pre-amendment version had led to confusion in those situations "when the proposed ordinances do not relate to zoning, but rather relate to the use of land." H.R. Committee on Community Affairs, Final Staff Analysis & Economic Impact Statement on CS/HB 1997 (June 13, 1990). As the dispute in this case illustrates, the 1990 version does not really do much to clear up that confusion.
The staff reports give no indication that the legislature intended to subject a completely new class of ordinances to the notice and public hearing requirements. Rather, the legislature appears to have intended the amendment to be a clarification of that "grey area" of non-zoning land-use regulation that the courts had previously held to be within the broad definition of "zoning ordinance." We conclude that the legislature intended these ordinances to be subject to the notice and hearing requirements for regulations "affecting the use of land."
The legislative staff and the courts have looked to municipal ordinance cases for guidance; and the courts have generally held that municipal ordinances which substantially impair the use of land are invalid if they were not enacted with the formality required under section 166.041(3)(c). In City of Sanibel, 409 So.2d at 1075, the second district explained:
If an ordinance substantially affects land use, it must be enacted under the procedures which govern zoning and rezoning.
(Emphasis supplied). These municipal ordinance cases should be considered in construing a county ordinance; and they indicate that the effect on land use must be something more than merely incidental for the *224 ordinance to be classified as one which "affects the use of land."[8]
Examples of ordinances that substantially affect land use can be found in Daytona Beach, 539 So.2d 597 (minimum distance between business selling alcohol and residential area); Fountain v. City of Jacksonville, 447 So.2d 353 (Fla. 1st DCA 1984) (prohibiting building of homes in area around air field, despite residential zoning classification); City of Sanibel, 409 So.2d 1073 (temporary moratorium on building); Ellison v. City of Ft. Lauderdale, 183 So.2d 193 (Fla. 1966) (prohibiting the keeping of horses); City of Miami Beach v. State, 108 So.2d 614 (Fla. 3d DCA 1959) (changing setback and height restrictions on new buildings).
On the other hand, notice and hearing requirements are not usually imposed upon changes to municipal building or construction codes.[9]Fountain, 447 So.2d at 355 (holding that the zoning ordinance had only an incidental effect on the building code and so was subject to the requirements). Nor are they required for impact fee ordinances which have the primary purpose of capital expansion rather than land use regulation. Baywood Constr., Inc. v. City of Cape Coral, 507 So.2d 768, 769 (Fla. 2d DCA), rev. denied, 513 So.2d 1060 (Fla. 1987).
We conclude that the structural requirements of the Broward County ordinance do not substantially affect the use of land. They are very similar to the type of changes that might be imposed on an existing business due to an amendment of the fire safety code or building code (width of doorways and aisles, removal or construction of partitions, prohibition against certain types of upholstery and floor covering materials). According to Fountain, these changes would not be subject to strict enactment requirements if they were part of a building or construction code.
Further, the purpose behind the ordinance is clearly to regulate conduct which the county commission has found to pose a danger to public health and safety, even though this purpose is accomplished in part by requiring businesses to make some structural changes. As in the Baywood Construction case, the primary goal was not to regulate land use and any incidental effect that the ordinance may have on appellants' use of their land is not a "substantial restriction" sufficient to trigger the notice and hearing requirements. Id. at 769.
Appellants argue that the "Rules of Construction" contained in the ordinance impermissibly give a penal law a liberal construction. The law is primarily aimed at licensing businesses that have been found by the county to have an impact upon public health and welfare, with penalties being provided only for violation of the licensing provisions. It is therefore remedial in nature and properly subject to liberal construction. Department of Envtl. Regulation v. Goldring, 477 So.2d 532, 534 (Fla. 1985).
3299 argues that County officials have unbridled discretion to deny a license application because section 2.05(d) requires denial of the application upon notification that the "applicant" has not complied with any statute, ordinance or regulation. 3299 argues that this means that a County employee would have discretion to deny an application because the owner of the business had received a traffic ticket. But section 2.05(d) does not say that  it permits denial if the "application" (not the "applicant") violates any statute, ordinance or regulation. 3299 has not *225 attempted to show how the correct language would afford county employees too much discretion.
Appellants argued to the trial court that the ordinance did not provide standards for county personnel to use to determine whether businesses are in compliance, such as whether omissions and misrepresentations in a license application are "material," whether security personnel are "adequate," etc. Where licensing laws are written in general terms, they are deemed to give administrative authorities only reasonable discretion to grant, deny or revoke a license. Permenter v. Younan, 159 Fla. 226, 31 So.2d 387, 389 (1947). So long as the aggrieved party has access to judicial review to prevent the arbitrary enforcement of the law, it will not be deemed to be discretionary provided that its provisions are susceptible to a construction that would render them valid. Id. 31 So.2d at 389-90. Appellants did not demonstrate that the ordinance would by its terms permit or encourage arbitrariness; and since review of licensing decisions is available in the circuit court, appellants have not shown that they would be likely to prevail on this argument.
International argues that the ordinance is both overbroad and vague.[10] An ordinance is "overbroad" only if it is possible that under its terms conduct which is protected by the first amendment may be affected. Operation Rescue v. Women's Health Center, Inc., 626 So.2d 664, 674-75 (Fla. 1993), aff'd in part, rev'd in part sub nom. Madsen v. Women's Health Center, Inc., ___ U.S. ___, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994) (affirmed in pertinent part, reversed on other grounds); Southeastern Fisheries Ass'n v. Department of Natural Resources, 453 So.2d 1351, 1353 (Fla. 1984). As was discussed earlier, appellants have demonstrated that first amendment free artistic expression rights are implicated in this case. However, International did not demonstrate in the trial court, or allege in its verified complaint or emergency motion, that the ordinance was susceptible to enforcement against protected activities. It therefore has failed to prove that it is likely to prevail on its overbreadth claim.
International argues that the ordinance is vague because it does not adequately define the terms it uses. A vague statute is one which does not give adequate notice of what is either prohibited or required and therefore can lead to arbitrary enforcement. Operation Rescue, 626 So.2d at 674; Southeastern Fisheries, 453 So.2d at 1353. Many of the specific terms that International complains about are used only in the preliminary findings section, not the regulatory sections. The failure to define these terms does not violate the test set forth in Southeastern Fisheries. Others are in fact defined in the ordinance itself.
The only terms remaining are "primary or dominant theme," and "material false representations."[11] The phrase "primary or dominant theme" is used in the definition of "adult material," a phrase that is used in that part of the ordinance that regulates book stores, not nightclubs such as International. The phrase "material false *226 representations" has been adequately defined by published opinions rendered by the Florida courts. We conclude that International has failed to demonstrate any likelihood that the ordinance will ultimately be deemed unconstitutionally vague.
In FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), the Supreme Court held that laws that require licensing of adult entertainment businesses are not unlawful prior restraints provided that they contain reasonable limitations upon the time that an application can remain pending prior to approval or denial, and that they provide for a prompt judicial review of adverse decisions. Id. at 226-230, 110 S.Ct. at 605-607.[12] In this case, the County must either issue or deny the license within fifty days of the filing of the application and judicial review is available upon filing of a notice of appeal from a notification of denial. Further, because appellants were in operation prior to the enactment of the ordinance, they were entitled to continue their operations while the County investigated their application. In their situation, there really was no possibility of prior restraint. Appellants have failed to show that these provisions do not comply with the requirements of FW/PBS, so they have not demonstrated a likelihood that they will be successful in their prior restraint claim.
Appellants argue that the code permits unreasonable warrantless searches of licensees because it provides that an inspection may be made "at any reasonable hour, when the agency has reasonable cause to believe that a violation of this Ordinance may exist." In Moore v. State, 442 So.2d 215, 216 (Fla. 1983), citing, Donovan v. Dewey, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981), the Florida Supreme Court held that warrantless administrative searches of a business property are reasonable if the business is a type that is pervasively regulated and the inspectors are not granted "unbridled discretion." The ordinance here permits inspections only upon reasonable cause and at reasonable hours.
The Moore opinion provides the definition of what constitutes a reasonable hour  the business' normal hours of operation. Id. at 216. The body of case law on the fourth amendment provides guidelines as to what constitutes "reasonable cause." The inspectors therefore are not permitted unfettered discretion in carrying out these searches.
Appellants have not disputed that their particular type of business  night clubs which feature nude entertainment  are already subject to heavy governmental regulation. They have therefore failed to demonstrate that they are likely to prevail on their claim that the inspection clause permits unreasonable administrative searches.
3299 alleges that the occupational license fee for adult establishments is $2,000, while other types of businesses pay only a $150 fee. There is no citation to the record to support this statement and we find no reference in either the ordinance itself or the record to the amount of the application fee or license fee (application and license fees to be set by resolution). 3299 has not sustained its burden of proof on this allegation.
Appellants complain that the ordinance regulates nude exhibitions in the context of adult entertainment, but not nudity that is presented in the context of more traditional art forms. There is nothing inherently unconstitutional in the decision to regulate the same conduct differently on the basis of differences between businesses or their methods of operations. In Wickman v. Firestone, 500 So.2d 740, 742 (Fla. 4th DCA 1987), this court held that equal protection was not violated by a statute that regulated solicitations for charitable contributions made by paid solicitors, but exempted those solicitations made by volunteers.
The one who attacks the classification scheme has the burden of proving that the distinctions are arbitrary and unreasonable. *227 North Ridge Gen. Hosp., Inc. v. City of Oakland Park, 374 So.2d 461, 465 (Fla. 1979), appeal dismissed, 444 U.S. 1062, 100 S.Ct. 1001, 62 L.Ed.2d 744 (1980). So long as there is any reasonable basis for distinguishing between different categories, equal protection guarantees are not violated. Id. at 464-65. In this case, the County identified certain public interest considerations that were present when adult entertainment businesses were unregulated  sexually transmitted diseases, prostitution, disorderly conduct, etc. Appellants have not demonstrated that these considerations arise in the contexts that they claim are similarly situated, yet unequally treated  legitimate theater, museums, traditional dance, etc. Appellants have therefore failed to meet their burden of demonstrating that the County's classification scheme is arbitrary and irrational.
Appellants argue that the code will result in the destruction of their businesses. They offered no evidence in the trial court to support their claims that compliance with the new regulations would result in lost profits, much less the closing of their businesses, beyond the conclusory allegations in their pleadings that they would lose business.
Appellants do not expressly raise the issue of impairment of obligations in their initial briefs, but the doctrine is alluded to in their arguments that the regulation of their businesses constitutes a taking. Even if the ordinance did impair the appellants' contracts with their dancers, the impairment was constitutional because it was reasonable and necessary to serve important public health and safety purposes. Pomponio v. Claridge of Pompano Condominium, Inc., 378 So.2d 774, 778-79 (Fla. 1979).
The ordinance provides for appeal of adverse decisions in the circuit court upon filing of a notice of appeal; therefore, any claim of lack of prompt review fails.
Appellants argue that public policy concerns favor their position that their artistic freedom should not be impaired. The County argues that public interests supported the denial of the temporary injunction in order to permit immediate regulation of an industry that poses the threats to the public health and welfare that were identified by the County Commission in the findings contained in the ordinance. In this case, the threat to the appellants' first amendment interests did not overcome the County's public health and welfare concerns to weigh in favor of granting the injunction.
GLICKSTEIN and WARNER, JJ., concur.
GUNTHER, J., concurs specially without opinion.

ON MOTIONS FOR REHEARING
PER CURIAM.
We deny appellants' motions for rehearing[1] and disapprove the suggestion for certification by 3299.[2]
While it is our conclusion that the motion for certification is legally insufficient, there is a question of great public importance involved in this case which should be resolved by the supreme court. Section 125.66, Florida *228 Statutes (1993), does not provide clear guidance for county governments in determining whether a proposed ordinance is a "land use regulation" subject to the special adoption requirements of that statute. Until this question is resolved, a county ordinance which affects the use of land, even tangentially, may be subject to being stricken if the county decides to forego the notice and hearing procedures set forth in the statute. Accordingly, we certify the following question as being of great public importance, even though the motion does not make a case for certification:
IS AN ORDINANCE THAT REQUIRES MODIFICATIONS TO ONLY THE INTERIOR STRUCTURE OF A BUILDING AN ORDINANCE THAT "AFFECTS THE USE OF LAND" WITHIN THE MEANING OF SECTION 125.66, FLORIDA STATUTES?
While both appellants' motions are being denied because their arguments are unpersuasive, it is necessary that we correct a factual error in our opinion which does not affect the result.[3] Accordingly, we delete from pages 21 and 22 of our opinion all of the last paragraph on page 21, which paragraph continues onto the next page. In place of all of said paragraph, we substitute the following:
GLICKSTEIN, GUNTHER and WARNER, JJ., concur.

ON MOTION FOR CLARIFICATION AS AMENDED
PER CURIAM.
On November 9, 1994, this court issued an opinion denying appellants' motions for rehearing, for rehearing en banc and for certification. While the opinion certified a question of great public importance on the court's own motion and corrected a factual error that had appeared in the original opinion it did not change the substance or effect of the court's original September 9, 1994 ruling.
Appellants' motion for clarification asserts that on November 11, 1994, two days after our opinion denying appellants' motions for rehearing was issued, the Broward Sheriff's Office arrested eight of their nude dancers for violation of the Broward County Adult Entertainment ordinance. Undoubtedly, the arrests took place because our September 9, 1994 opinion vacated the stay we previously had entered, which stay had prevented the County from enforcing the subject ordinance until disposition of the present appeal here. Our November 9, 1994 opinion denying appellants' motions for rehearing and certification did not affect the earlier opinion which vacated the stay; however, the opinion, when issued, was rubber stamped by our clerk with the following information:
NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DISPOSED OF[1]
Appellants now seek clarification of whether that opinion is final, or whether it will not become final until the time for rehearing has expired. In essence, appellants are asking whether an opinion denying a motion for rehearing becomes effective immediately, or whether there is some period of time provided for the filing of a motion for rehearing of the motion for rehearing (as the rubber stamped information would suggest).
Rule 9.330(b), Florida Rules of Appellate Procedure (1994), does not provide for motions for rehearing of orders on motions for rehearing:
(b) Limitation: A party shall not file more than 1 motion for rehearing or for clarification of decision and 1 motion for certification with respect to a particular decision.
Under earlier versions of the rule, successive or extraordinary motions for rehearing were not permitted. Davis v. State, 276 So.2d 846, 848 (Fla. 2d DCA 1973) (on motion for rehearing), aff'd, 290 So.2d 30 (Fla. 1974); Cottages, Miami Beach, Inc. v. Wegman, 59 So.2d 528 (Fla. 1952). An exception to the rule has been recognized where on the first *229 motion for rehearing, the court changes its previous ruling. Dade Fed. Sav. & Loan Ass'n v. Smith, 403 So.2d 995, 999 (Fla. 1st DCA 1981) (on further motion for rehearing). In Dade Federal, the court had granted the motion for rehearing and issued a new opinion changing the entire basis for the opinion. Thus, it considered the supplementary opinion a new decision.
We do not consider our opinion denying rehearing a new opinion. We did not change the result or the reasoning of our prior opinion. Instead, we certified a question and corrected a factual error. We are considering this motion for clarification solely because of the "rubber stamp" which, in hindsight, should not have been placed on the opinion denying rehearing.
One of the parts of the original decision which was not changed was that provision vacating the stay that prevented the County from enforcing the ordinance. Those parts that were changed  the discussion of the impairment of contracts issue and the certification on the court's own motion  did not affect the prior determination that the ordinance was valid and enforceable. Upon issuance of the decision on the motions for rehearing and certification that part of the decision that vacated the stay became final and the County was then free to pursue enforcement of the ordinance.
GLICKSTEIN, GUNTHER and WARNER, JJ., concur.
NOTES
[1] 3299's motion for temporary injunction also invoked unspecified "[l]oss[es] of its constitutional rights and freedoms" in support of its claim of irreparable harm. It attempts to identify those losses for the first time in its reply brief. 3299 waived these newly asserted grounds by failing to raise them in the proceedings before the trial court.
[2] While nudity is prohibited in establishments that serve liquor, an exception is made for licensees who comply with the requirements of the Code. The record here is silent on the question of whether appellants' clubs serve liquor.
[3] Rather, at the trial court level the only evidence offered on proximity and contact was that contact was required by the 3299 dancers' contracts and that it was necessary for the placement of tips in the dancers' garters. One Florida district court has rejected the claim that "lap dancing" is a protected form of free speech and has held that such activity can be lawfully banned in its entirety as part of the exercise of a government's power to regulate the sale of liquor. Hoskins v. Department of Business Regulation, Division of Alcoholic Beverages & Tobacco, 592 So.2d 1145, 1146 (Fla. 2d DCA), rev. denied, 601 So.2d 552 (Fla. 1992). However, the second district later indicated that it may not extend that finding to hold that lap dancing is "lewd behavior" within the meaning of the criminal statutes. State v. Waller, 621 So.2d 499, 502 (Fla. 2d DCA 1993).
[4] Because there is nothing in the record below that indicates that the appellants hold liquor licenses or serve alcoholic beverages, we do not affirm the order of denial by relying upon the principle that the government has the authority to restrict adult entertainment to the point of absolute prohibition under its authority to regulate the sale and consumption of alcohol. City of Daytona Beach v. Del Percio, 476 So.2d 197 (Fla. 1985).
[5] Legislative enactments are presumed to be constitutional. Gardner v. Johnson, 451 So.2d 477, 479 (Fla. 1984). Courts are required to resolve doubts as to the interpretation of ordinances in a manner that will render them valid, if at all possible. Hamilton v. State, 366 So.2d 8, 10 (Fla. 1978). Appellants faced a heavy burden in the trial court to establish any likelihood that their constitutional attacks on the ordinance would ultimately prevail.
[6] The Broward County ordinance contains a severability clause, so the entire Code would not necessarily be rendered invalid even if a portion of it were to be considered a land use regulation.
[7] Oddly, chapter 90-152 would not have affected City of Sanibel since it does not amend section 166.041. Chapter 90-152 amends only section 125.66 which covers county ordinances.
[8] In A.B.T. Corp. v. City of Ft. Lauderdale, 664 F. Supp. 488, 492-93 (S.D.Fla.), aff'd, 835 F.2d 1439 (11th Cir.1987), the federal district court abstained from considering a complaint to enjoin enforcement of a city ordinance governing the location of nude bars on the ground that Florida law offered no clear guidance about what constitutes a "substantial change" in land use within the meaning of section 166.041(3). We disagree. The body of case law that has developed over the years leads to the conclusion that the type of ordinance that falls under these requirements is one which: (1) prohibits the owner from building at all; (2) prohibits the owner from using the land for a particular purpose; or (3) places major restrictions on the size, construction or placement of the building which can be erected on the land.
[9] The enactment of county building codes is governed by section 125.56, Florida Statutes, which includes separate notice requirements. There is nothing in that section that refers to the amendment of building codes.
[10] Although 3299 raised these grounds in their motion for injunction, it appears to have abandoned them on appeal by failing to include them in its initial brief.
[11] The term "primary or dominant theme" is used within the Code's definition of "adult material," section 1.07(6):

a. Books, magazines, periodicals, or other printed matter, photographs, films, motion pictures, video cassettes, slides, or other visual representations; recordings, other audio matter; and novelties or devices that have, as their primary or dominant theme, subject matter depicting, exhibiting, illustrating, describing, or relating to specified sexual activities or specified anatomical areas....
(Emphasis supplied). Section 2.05(d) provides for the denial of an Adult Entertainment Occupational License upon notification that:
(2) The application contains material false information, or information material to the decision was omitted; failure to list an individual required to be listed, and whose listing would result in a denial, is presumed to be material false information for purposes of denial of the application; the certification that the licensee owns, possesses, operates and exercises control over the proposed or existing adult use establishment is a material representation for purposes of this Section... .
(Emphasis supplied).
[12] Because the government is not passing directly upon the protected activity itself, but rather on the qualifications of the licensee, the government does not bear either the burden of seeking judicial review prior to denial or the burden of proof in court. FW/PBS, 493 U.S. at 228-30, 110 S.Ct. at 606-07.
[1] Neither party has properly sought en banc consideration. International did not seek it and 3299 failed to file an accompanying motion for rehearing nor did it adopt International's motion for rehearing. See State v. Kilpatrick, 420 So.2d 868, 869 (Fla. 1982); La Grande v. B & L Services, Inc., 436 So.2d 337 (Fla. 1st DCA 1983). Moreover, the issues are not of "exceptional importance" within the meaning of Florida Rule of Appellate Procedure 9.331.
[2] 3299 requests that this court certify the appeal for "pass through" jurisdiction to the supreme court pursuant to Florida Rule of Appellate Procedure 9.125. Rule 9.125(c) requires that a suggestion for certification to the supreme court "shall be filed within 10 days from the filing of the notice of appeal." The notice of appeal was filed September 30, 1993. 3299 missed the deadline by over a year.

The motion does not identify the question that is being proposed for certification to the supreme court as being of "great public importance." A similar defect was encountered in State v. Johnson, 467 So.2d 412 (Fla. 4th DCA), rev. denied, 480 So.2d 1296 (Fla. 1985), where the county court certified a question to this court, but neither the motion for certification nor the certification itself identified the question presented. This court declined to accept jurisdiction explaining, "we are ... left to our own devices in order to unearth a specific question." Id. at 413.
[3] Upon further review of the record, we agree with 3299 that it presented evidence that two of its dancers' contracts were entered into prior to the effective date of the ordinance.
[1] The clerk's stamp is used on a decision on a motion for rehearing only when there is some change from the original decision.