**CHEROKEE COUNTRY CLUB, INC.**

v.

**CITY OF KNOXVILLE, et al.**

Supreme Court of Tennessee,
at Knoxville.

Sept. 9, 2004 Session.

Nov. 22, 2004.

Charles A. Wagner, III, and W. Turner Boone, Knoxville, Tennessee, for the Appellant, Cherokee Country Club, Inc.

Ronald E. Mills, Knoxville, Tennessee, for the Appellee, City of Knoxville.

Charles W. Swanson, Knoxville, Tennessee, for the Appellees, Members of the City Council.

## OPINION

E. RILEY ANDERSON, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and JANICE M. HOLDER, WILLIAM M. BARKER, JJ., and J.S. DANIEL, Sp.J., joined.

We granted this appeal to determine the validity of a permanent city ordinance that prohibited the issuance of all demolition permits for property under consideration for designation as a historical overlay district. After finding that the ordinance was an invalid zoning ordinance because the City of Knoxville failed to comply with statutory planning, notice, and hearing requirements, *see* Tenn.Code Ann. §§ 13-7-201-211 (1999 & Supp.2004), the trial court issued a peremptory writ of mandamus requiring the issuance of a demolition permit to the appellant, Cherokee Country Club, Inc. The Court of Appeals reversed the trial court's judgment, holding that the ordinance was a building regulation not subject to the statutory zoning requirements. After reviewing the record and authority, we hold that the ordinance was a zoning regulation that was not enacted in accordance with statutory zoning requirements or the Tennessee Historic Zoning Act. We also conclude that there was no error in failing to join necessary parties, that there was no error in granting the motion for judgment on the pleadings, and that there was no error in issuing a writ of mandamus. Accordingly, we reverse the

Court of Appeals' judgment and reinstate the trial court's judgment.

## BACKGROUND

In July of 1999, the appellant, Cherokee Country Club, Inc. ("Cherokee"), purchased from the Coughlin family improved real property at 5305 Lyons View Pike in Knoxville, Tennessee, which included an unoccupied house known as the "Smith/Coughlin House" or the "Smith House." Cherokee Country Club bought the property intending to demolish the Smith House, as it was surrounded on three sides by Cherokee's recreational facilities, and further intended to utilize the property within its current residential zoning.

In 1999, at the time of Cherokee's purchase, the property was not in, nor had it been proposed for inclusion in, a historic district. On April 4, 2000, however, the Knoxville City Council ("City") enacted emergency demolition ordinance No. 0–119-00, which stated:

> No demolition permit shall be issued, for a period of 180 days, for any property under review and consideration for an H–1 overlay or NC–1 overlay designation after the application process has been initiated in accordance with the procedures set forth in Article IV, § 14 and § 22, respectively, of the Knoxville Zoning Code. The 180 day period can be extended by Knoxville City Council, as necessary.

Rather than enact the demolition ordinance as an amendment to its zoning code, the City elected to pass the demolition ordinance as an emergency ordinance. The effect of the City's action was to avoid the notice, hearing, and review require-

ments of the traditional zoning statute, *see* Tenn.Code Ann. § 13–7–201 (Supp.2004), and the notice, hearing, and review requirements of the Historical Zoning Statute, *see* Tenn.Code Ann. § 13–7–401 (1999). As a result, Cherokee was unaware that the ordinance was enacted.

On January 17, 2002, Knoxville Mayor Victor Ashe filed an application with the Knoxville/Knox County Metropolitan Planning Commission to re-zone the "Smith House" purchased by Cherokee two and one-half years earlier as an H–1 historic district. On February 20, 2002, Cherokee, which was unaware of both the emergency demolition ordinance and the pending re-zoning application filed by the Mayor,[1] applied for a demolition permit to demolish the Smith House. The City of Knoxville Building Official ("Building Official") denied Cherokee's application for a demolition permit based on the application for historic re-zoning that had been filed by Mayor Ashe and the language of the emergency demolition ordinance.

On March 8, 2002, after the governmental action denying demolition, Cherokee filed a complaint in the Circuit Court for Knox County, Tennessee, seeking a declaratory judgment and a Writ of Mandamus. The complaint alleged that the emergency demolition ordinance was enacted in violation of statutory procedures that require Planning Commission approval, notice, and a public hearing prior to the enactment of a zoning ordinance. Tenn.Code Ann. §§ 13–7–201–211. The complaint also alleged that the ordinance was enacted in violation of a separate set of statutory procedures that require Historic Zoning Commission approval, notice, and a public hearing before the creation and regulation

---

1. Although the City asserts on appeal that notice was provided by publication and by posting a sign on the property, Cherokee maintains that it had no notice until its application for a demolition permit was denied. The trial court made no factual findings in this regard.

of a historic district or zone. Tenn.Code Ann. §§ 13–7–401–410 (1999 & Supp.2004). The complaint requested a writ of mandamus directing the Building Official to issue a demolition permit.

The City filed an answer asserting that the emergency demolition ordinance was properly enacted as a building regulation and, therefore, the statutory zoning procedures were not applicable. The answer also alleged that Cherokee failed to join indispensable parties and that a writ of mandamus was not appropriate since Cherokee had not exhausted administrative review of the Building Official's action.

On April 12, 2002, the trial court granted Cherokee's motion for judgment on the pleadings after concluding that the emergency demolition ordinance was invalid because it had not been enacted in compliance with 1) statutory provisions that require Planning Commission approval, notice, and a public hearing for the enactment of a zoning ordinance, see Tenn. Code Ann. §§ 13–7–201–211, and 2) statutory provisions that require planning approval, notice, and a public hearing for the creation and regulation of an historic district, see Tenn.Code Ann. §§ 13–7–401–410. The trial court ordered that a writ of mandamus be issued requiring that the Building Official issue a demolition permit to Cherokee.

On appeal, the Court of Appeals concluded that the emergency demolition ordinance was not invalid because it was a building regulation not subject to the statutory zoning requirements. Tenn.Code Ann. §§ 13–7–201–211. The court reasoned that the ordinance affected how Cherokee could undertake the use of its property but that the ordinance did not affect what uses were permissible. The court also held that the Tennessee Historic Zoning Statute was not applicable because the emergency demolition ordinance did

not apply to an existing historic district. See Tenn.Code Ann. §§ 13–7–401–410. (1999 & Supp.2004).

We granted Cherokee's application for permission to appeal.

## ANALYSIS

### Standard of Review

A motion for judgment on the pleadings may be filed "[a]fter the pleadings are closed but within such time as not to delay the trial." Tenn. R. Civ. P. 12.03. In reviewing a trial court's ruling on a motion for judgment on the pleadings, we must accept as true "all well-pleaded facts and all reasonable inferences drawn therefrom" alleged by the party opposing the motion. McClenahan v. Cooley, 806 S.W.2d 767, 769 (Tenn.1991). In addition, "[c]onclusions of law are not admitted nor should judgment on the pleadings be granted unless the moving party is clearly entitled to judgment." Id.

### Zoning Regulations

Cherokee argues that the emergency demolition ordinance was passed by the City of Knoxville in violation of state statutes requiring that zoning regulations be enacted after written notice, a public hearing, and approval by the local planning commission. See Tenn.Code Ann. §§ 13–7–201–211 (1999 & Supp.2004). The City of Knoxville responds that the statutory zoning requirements were inapplicable because the emergency demolition ordinance was a building regulation enacted pursuant to the City's general police powers that did not require notice, hearings, or approval prior to its enactment.

Although not addressed by the Court of Appeals, the City also argues that the ordinance was proper under the so-called "pending ordinance" doctrine discussed in State ex rel. SCA Chemical Waste Ser-

*vices, Inc. v. Konigsberg,* 636 S.W.2d 430 (Tenn.1982). In *Konigsberg,* this Court upheld a county resolution prohibiting the issuance of construction permits. *Id.* at 433. The Court explained that the resolution was an "interim ordinance" that preserved the status quo pending the effective date of a comprehensive zoning ordinance that had already been properly enacted by the county. *Id.* at 436. Unlike *Konigsberg,* however, emergency demolition ordinance No. 0–119–00 does not seek to impose a temporary moratorium, nor does it seek to preserve the status quo pending the implementation or consideration of a comprehensive zoning plan. As a result, *Konigsberg* is not applicable.

### Tennessee Statutory Provisions

We must determine whether the emergency demolition ordinance was a zoning ordinance or a building regulation. Accordingly, we will first examine Tennessee's statutory provisions regarding zoning.

Local governments, including cities, have no power to control the use of land unless the State of Tennessee delegates this power to them. Accordingly, a municipality has the power to enact or to amend zoning regulations "[f]or the purpose of promoting the public health, safety, morals, convenience, order, prosperity and general welfare." Tenn.Code Ann. § 13–7–201(a)(1). This power is delegated to local governments by the Tennessee legislature and includes the power to

> regulate the location, height, bulk, number of stories and size of buildings and other structures, the percentage of the lot which may be occupied, the sizes of yards, courts and other open spaces, the density of population, and the uses of buildings, structures and land for trade, industry, residence, recreation, public activities and other purposes.

*Id.*

In the exercise of its zoning authority, the state requires that a municipality's planning commission must "make[ ] and certif[y]" a zoning plan to the chief local legislative body. Tenn.Code Ann. § 13–7–202. The zoning plan must include "the full text of a zoning ordinance and the maps, representing the recommendations of the planning commission.... " *Id.* Before enacting the zoning ordinance or any zoning amendment, the chief legislative body "shall hold a public hearing thereon, at least fifteen (15) days' notice of the time and place of which shall be published in the official municipal journal or in a newspaper of general circulation in the municipality." Tenn.Code Ann. § 13–7–203(a); *see also* Tenn.Code Ann. § 13–7–204.

These statutes cover a broad range of land use regulations and restrictions. Tenn.Code Ann. § 13–7–201(a)(1). In addition, there is no doubt that the statutes reflect the legislative intent that all zoning plans and zoning amendments must be scrutinized by municipal planning commissions and the public prior to their enactment. *See* Tenn.Code Ann. §§ 13–7–202, – 203. However, because these statutes do not address the issue of distinguishing zoning ordinances from building regulations, we turn to other authorities for guidance.

### Zoning Laws and Building Ordinances

█ Notwithstanding the mandatory provisions on zoning, a municipality has the authority to enact regulations concerning the health, safety, and welfare of the community pursuant to its police powers without providing notice or hearings. *See* 1 Edward H. Ziegler, Jr., et al., Rathkopf's The Law of Zoning & Planning § 1.02 (4th ed. 2003) ("Ziegler"). A municipality may not, however, "evade the protections

thrown about the citizen's use of his property by the legislative limitations imposed on the zoning power by the device of labeling a zoning act a mere exercise of police power." *Ellison v. Fort Lauderdale,* 183 So.2d 193, 195 (Fla.1966).

The precise contours of determining when an ordinance is a zoning ordinance, and thus subject to statutory zoning requirements, however, are difficult to draw or define. 1 Ziegler § 1.02. A review of decisions in other jurisdictions reflects this difficulty. *See Fairfax MK, Inc. v. City of Clarkston,* 274 Ga. 520, 555 S.E.2d 722, 723 (2001) (stating that a licensing ordinance that "somewhat concerns location does not make it a zoning ordinance"); *Square Lake Hills Condo. Ass'n v. Bloomfield Township,* 437 Mich. 310, 471 N.W.2d 321, 322 (1991) (distinguishing a regulated "use" from a regulated "activity"); *Vulcan Materials Co. v. Iredell County,* 103 N.C.App. 779, 407 S.E.2d 283, 286 (1991) (zoning ordinance "substantially interferes" with land use).

One leading authority states that determining whether a zoning ordinance exists requires "a consideration of the substance of its provisions and terms, and its relation to the general plan of zoning in the city." 8 McQuillin, The Law of Municipal Corporations § 25.53 (3rd ed. 2004) ("McQuillin"). *See Square Lake Hills Condo. Ass'n,* 471 N.W.2d at 326 (quoting McQuillin). Similarly, another prominent treatise has explained that

> [w]here the particular restriction constitutes, or would constitute, a substantial interference with land use, the municipality ordinarily must treat it as a zoning regulation and must follow statutory or character zoning procedures, even though other authority for the particular type of ordinance has been granted.

1 Ziegler § 1.02(3).

Whether a "substantial interference" with the use of land exists is largely a case

by case determination. *Id.* In *3299 N. Fed. Highway, Inc. v. Bd. of County Comm'rs of Broward County,* 646 So.2d 215, 224 (Fla.Dist.Ct.App.1994), for instance, a Florida appellate court discussed several ordinances that substantially affected land use and, therefore, required planning, notice and public hearings as zoning regulations. These included ordinances establishing a minimum distance between businesses selling alcohol and residential areas, prohibiting the construction of homes near an airport, imposing moratoria on the issuance of building permits, and changing setback and height restrictions on the construction of new buildings. *Id.* (citations omitted). The court contrasted these ordinances with those that do not *substantially* affect the use of land, such as changes to fire regulations or construction codes governing the width of doors and aisles, the removal or construction of walls, and building materials. *Id.* (citations omitted).

Similarly, in *City of Sanibel v. Buntrock,* 409 So.2d 1073 (Fla.Dist.Ct.App.1981), the court held that the City's ordinance imposing a one-year moratorium on the issuance of building permits for commercial development was invalid because it did not comply with zoning statutes which required public notice and public hearing. Although the City argued that the ordinance was a building regulation not requiring notice rather than a zoning restriction, the court held that the ordinance "substantially affect[ed] land use" and must be enacted in accordance with applicable zoning statutes. *Id.* at 1075.

Finally, in *Vulcan Materials Co.,* a North Carolina case with strong similarities to the case before us, the court invalidated an ordinance that placed a sixty-day moratorium on the issuance of building permits pending consideration of a zoning

plan. 407 S.E.2d at 286. After observing that the ordinance " 'had the effect of making the unzoned areas of the County subject to zoning restrictions prior to the adoption of a zoning ordinance applicable [in] those areas,' " the court concluded:

> If an ordinance substantially affects land use, it must be enacted under the procedures which govern zoning and rezoning. *To entirely prohibit a person from building upon his property even temporarily is a substantial restriction upon land use.* Consequently, it is not too much to ask that a municipality follow the same procedures with respect to notice and hearing before it puts such a moratorium into effect.

*Id.* (emphasis added); *see also Sandy Mush Properties, Inc. v. Rutherford County,* 595 S.E.2d 233, 236 (N.C.Ct.App.2004) (following *Vulcan Materials Co.*).

The "substantial effect" analysis reflected in the above authority was not applied by the Court of Appeals in this case. The intermediate appellate court instead relied upon *Bittinger v. Corporation of Bolivar,* 183 W.Va. 310, 395 S.E.2d 554 (1990), in which the court said that the distinguishing feature was "that a building permit involves how that use is undertaken, while a zoning permit concerns whether a certain area may be used for a particular purpose." *Id.* at 558. The court also cited *Fairfax MK, Inc.,* in which the Supreme Court of Georgia emphasized that "zoning is to be distinguished from other regulations with which a developer must comply, such as requirements for a building permit." 555 S.E.2d at 723. We note,

however, that these decisions did not consider whether an emergency demolition ordinance "substantially affected" the use of land.

■ In resolving this issue of first impression, we believe that the determination of whether a regulation or an ordinance "substantially affects" the property owners' use of land is a well-reasoned and persuasive approach. This analysis avoids the difficulty of definitions found in some decisions by focusing on both the terms and the effect of an ordinance, as well as its "relation to the general plan of zoning." McQuillin § 25.53. The analysis is also more comprehensive and more precise than simply attempting to distinguish whether the terms of an ordinance regulate the use of land or how the land is used.[2] Finally, the analysis eliminates the risk that a municipality may avoid statutory zoning requirements by attempting to label what is in reality a zoning ordinance as a building regulation.

■ In adopting and applying this analysis to the present case, we conclude that emergency demolition ordinance No. 0–119–00 substantially affected Cherokee's use of its property. This unusual emergency ordinance was permanently enacted to prohibit the issuance of demolition permits for a 180–day period for any property under consideration for re-designation as a historical district. The 180–day period was renewable by the City Council "as necessary" and, thus, could no doubt be extended indefinitely by the Council.[3] Al-

2. Similarly, we note that the Court of Appeals misapprehended the rule of construction that requires courts to apply an interpretation that upholds the validity of a building ordinance or a zoning regulation. This rule of construction is applied in interpreting ambiguous language *within* a building ordinance or a zoning regulation. It does not apply in deter-

mining whether to characterize a land use restriction as a building regulation or a zoning ordinance.

3. Accordingly, the City's effort to characterize the ordinance as a "stop gap" or "temporary" measure imposing a limited moratoria is unconvincing, and its reliance on a string of "stop-gap" decisions in other jurisdictions is

though not every regulation relating to demolition is a matter of zoning, the broad and permanent restrictions in this ordinance substantially affected Cherokee's use of its property and the manner in which Cherokee could effectuate any uses that remained permissible.

In addition, the emergency demolition ordinance was not related to or necessary for temporarily enforcing the status quo pending the implementation or consideration of an existing comprehensive zoning plan or amendment; instead, the ordinance permanently prohibited a use of property pending an *application to consider* a historic overlay designation without undertaking the appropriate planning, providing notice to the affected landowners, or conducting public hearings. Moreover, the City had over two years from the time Cherokee purchased this property in which to establish a historic district by following the proper statutory procedure but failed to do so. *See* Tenn.Code Ann. § 13–7–401 (1999) (stating the procedures for creating a historic district in accordance with the Tennessee Historic Zoning Act). Cherokee's proposed use of the Smith House property was permitted under existing zoning classifications and, according to its complaint, Cherokee received no notice of the City's past or proposed actions until the denial of its application for a demolition permit. Given these factors, the emergency demolition ordinance substantially affected Cherokee's use of its property and created a zoning ordinance that was not enacted in accordance with the stat-

utes requiring planning, public notice, and a public hearing. Tenn.Code Ann. §§ 13–7–201–211 (1999 & Supp.2004).[4]

The conclusion we have reached under the peculiar circumstances of this case is also consistent with the language and the purpose of Tennessee's statutory zoning law. The terms and effect of the emergency demolition ordinance clearly fell within the statutory provisions authorizing local governments and municipalities to regulate "the uses of buildings, structures and land for trade, industry, residence, recreation, public activities and other purposes." Tenn.Code Ann. § 13–7–201(a)(1).

The State of Tennessee's statutory public purpose of promoting the cultural welfare of the State's people by enabling municipalities to preserve and protect historic structures as visible reminders of the history and cultural heritage of the city and state is a praiseworthy and admirable one. The City is to be commended for its historic preservation objectives. In pursuing its objectives, however, the exercise of its authority must comply with statutory planning, notice, and hearing provisions to balance the City's authority with the interests of both the landowner and the public. Tenn.Code Ann. § 13–7–203 (1999). Indeed, the planning, notice, and public hearing provisions are particularly essential in a case where there are legitimate interests on both sides that must be resolved in a full and fair manner. As the trial court also observed:

misplaced. Moreover, we note that the City failed to cite a majority of decisions that require the application of zoning procedures even to ordinances that are "stop-gap" or temporary in nature. *See* 2 Ziegler § 11.13.

**4.** As a result, the authority relied upon by the City involving ordinances intended to preserve the status quo pending the implementation or consideration of a pending or enacted

zoning plan are unpersuasive. Indeed, the single case cited by the City in which an ordinance prohibited the issuance of a demolition permit "for a reasonably limited" time was clearly enacted to preserve *an already existing historic area. Heritage Hill Ass'n, Inc. v. City of Grand Rapids*, 48 Mich.App. 765, 211 N.W.2d 77 (1973) (emphasis added).

The efforts, however desirable, to protect our heritage and history must be taken within the framework of available power and procedures. When governmental officials act for the benefit of the citizens it must not act in a manner that violates the rights of an individual citizen.

Accordingly, we conclude that emergency demolition ordinance No. 0–119–00 was invalid because it was not enacted in accordance with the planning, public notice, and public hearing provisions of the applicable zoning statutes. Tenn.Code Ann. §§ 39–7–201–211 (1999 & Supp.2004). We therefore reinstate the trial court's judgment issuing a writ of mandamus and requiring the issuance of a demolition permit to Cherokee Country Club, Inc.

*Historic Zoning Statutes*

■ Cherokee's next argument is that the emergency demolition ordinance was enacted by the City in violation of Tennessee's Historic Zoning Statute, which requires that historic zoning regulations be enacted after submission to the planning commission, public notice, and public hearings as a new zoning ordinance or as an amendment to an existing zoning ordinance. *See* Tenn.Code Ann. §§ 13–7–401–410. Cherokee also argues that the emergency demolition ordinance was within the scope of the Historic Zoning Statute because it regulates the demolition of structures located or proposed for inclusion within historic zoning statutes. The City of Knoxville argues that the ordinance was a building regulation and that the Tennessee Historic Zoning Act was inapplicable because the regulation did not affect an existing historic district.

The State of Tennessee, through its Historic Zoning Statute, enables a local government body or municipality to establish special historic districts under certain con-

ditions. Tenn.Code Ann. § 13–7–402(a). An historic district or zone is defined as an area that possesses a "significant individual structure or a concentration, linkage or continuity of sites, buildings, structures or objects which are united by past events or aesthetically by plan or physical development...." Tenn.Code Ann. § 13–7–404. An historic district must be established as "part of a new zoning ordinance or as an amendment to existing ordinances" and must satisfy one of the following statutory requirements:

(1) It is associated with an event which has made a significant contribution to local, state, or national history;

(2) It includes structures associated with the lives of persons significant in local, state, or national history;

(3) It contains structures or groups of structures which embody the distinctive characteristics of a type, period, or method of construction, or that represent the work of a master, or that possess high artistic values, or that represent a significant and distinguishable entity whose components may lack individual distinction;

(4) It has yielded or may be likely to yield archaeological information important in history or prehistory; or

(5) It is listed in the National Register of Historic Places.

Tenn.Code Ann. § 13–7–404(1)–(5) (1999).

The creation of a historic district or zone requires submission of a plan to the historic zoning commission, which makes written recommendations to the local legislative body. Tenn.Code Ann. § 13–7–405(a), (b). Prior to the establishment of a historic district or zone, the historic zoning commission shall adopt a set of "review guidelines" and shall provide "[r]easonable public notice and opportunity for public comment" on the review guidelines.

Tenn.Code Ann. § 13–7–406. Once a historic district or zone is established, a local governing body may "regulate the construction, repair, alteration, rehabilitation, relocation and demolition of any building or other structure which is located or is proposed to be located within the boundaries of any historic district or zone. . . ." Tenn.Code Ann. §§ 13–7–402(a) (1999 & Supp.2004).

In our view, the terms and effect of the emergency demolition ordinance enabled the City to create a de facto historic district for the specific purpose of prohibiting the issuance of demolition permits indefinitely without following any of the statutory requirements. For instance, the emergency demolition ordinance was enacted without the planning of the historic zoning commission or the consideration of the regional zoning commission. Tenn.Code Ann. § 13–7–403(a) (1999). The emergency demolition ordinance included none of the findings required to establish a historic zone involving the significant historical, aesthetic, structural, and related criteria. Tenn.Code Ann. § 13–7–404(1)–(5) (1999). The emergency ordinance was enacted without recommendations submitted by the historic zoning commission, *see* Tenn. Code Ann. § 13–7–405 (1999), and it was adopted without following the review guidelines, public notice, and public hearing requirements set forth by statute. Tenn.Code Ann. § 13–7–406 (1999).

In addition, the emergency demolition ordinance substantially affected the use of the land by creating a permanent moratorium on a specific use of the property, i.e., demolition, without following the required statutory safeguards applicable to historic districts or zones. The state statute provides that a municipality may enact an ordinance to prevent demolition of a structure only within "an established historic zone or district." Tenn.Code Ann. § 13–7–407(b). Moreover, the ordinance must also "provide appropriate safeguards to protect property owners from undue economic hardship." *Id.* In effect, the emergency demolition ordinance allowed the City to circumvent these safeguards by imposing a permanent moratorium without public notice, consideration by the required planning and other commissions, or any of the other required public notice and public hearing statutory procedures. *See Vulcan Materials Co.,* 407 S.E.2d at 286.

The emergency demolition ordinance had to conform to the statutory planning, public notice, and public hearing provisions to balance the City's authority with the interests of both the landowner and the public as provided for in the Tennessee Historic Zoning Act. Tenn.Code Ann. § 13–7–401. Indeed, the legislature has made crystal clear its intent in the zoning and historic zoning statutes that local governments have a duty to comply with the public notice and public hearing requirements of the law. It has also made clear in the sunshine laws that local governments have a duty to provide public notice of governmental action. *See* Tenn.Code Ann. § 8–44–101(a)(2002) ("The general assembly hereby declares it to be the policy of this state that the formation of public policy and decisions is public business and shall not be conducted in secret."). Local governments in complying with the letter and spirit of these laws should aspire to provide public notice of all government action.

Given these circumstances, we disagree with the Court of Appeals' reasoning that the Historic Zoning Statutes were inapplicable since the emergency demolition ordinance did not affect an "existing historic district or zone" under Tennessee Code Annotated section 13–7–402. Indeed, the Court of Appeals' rationale would allow municipalities to impose innumerable re-

strictions by creating de facto historic districts without adhering to the statutory safeguards.

We likewise disagree with the City's contention that the emergency demolition ordinance was necessary as the only means for preserving the status quo pending the consideration of a historic district or zone. Indeed, the City's unilateral enactment of a permanent ordinance without following statutory requirements for planning, public notice, and public hearing is not the appropriate or the only means for obtaining such relief. Instead, the City may always file a public complaint seeking a temporary restraining order or other injunctive relief so that a court can make the appropriate findings with notice and hearing in a full and fair manner.

In sum, we conclude that the emergency demolition ordinance was invalid because it was not enacted in accordance with applicable historic zoning statutes. Accordingly, we also reinstate on this separate ground the trial court's judgment issuing a writ of mandamus requiring the issuance of a demolition permit to Cherokee Country Club, Inc.

### Remaining Issues

Given our conclusion that Knoxville City Ordinance No. 0–119–00 is invalid, we must address the remaining procedural issues raised by the City in this appeal. We will address each in turn.

### Joinder of Necessary Parties

■ The City argues that the trial court erred in granting relief because Cherokee failed to join other necessary parties, including other affected property owners within the area being considered for designation as a historic district. Cherokee maintains that the City failed to show that other parties were indispensable in resolving this action, as no other party had an interest in the demolition of a structure located on Cherokee's property.

Joinder of persons "needed for just adjudication" is addressed in Rule 19.01 of the Tennessee Rules of Civil Procedure:

> A person who is subject to the jurisdiction of the court shall be joined as a party if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of the claimed interest.

Tenn. R. Civ. P. 19.01. The rule protects absent persons and parties from multiple litigation and inconsistent obligations. *Samuelson v. McMurtry*, 962 S.W.2d 473 (Tenn.1998).

The City's argument that Cherokee failed to join other property owners who were affected by the consideration for a historical district designation is not persuasive for several reasons. First, the narrow issue in this case is the issuance of a demolition permit for a structure located on property owned by Cherokee. Second, the City has mixed the determinative legal issue in this case, i.e., the validity of the emergency demolition, with the interests of those affected by the consideration of a proposed historical district. The trial court's conclusion that the ordinance was a zoning ordinance subject to statutory zoning laws requiring planning, public notice, and public hearing, however, did not hinge upon or require litigation of the interests of all those affected by the underlying

proposed historical district. Moreover, the trial court's conclusion did not leave any property owners subject to multiple or inconsistent obligations.

Accordingly, there was no error in failing to join other affected property owners in this case.

### Judgment on the Pleadings

■ The City argues that the trial court erred in ruling on Cherokee's "motion for judgment on the pleadings" because the motion was filed before the pleadings were closed. Cherokee maintains that the trial court properly granted its motion.

The resolution of this issue is governed by the Tennessee Rules of Civil Procedure. A motion for judgment on the pleadings may be filed "[a]fter the pleadings are closed but within such time as not to delay the trial." Tenn. R. Civ. P. 12.03. Rule 7.01 of the Tennessee Rules of Civil Procedure states as follows:

> There shall be a complaint and an answer; and there shall be a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summonsed under the provisions of Rule 14; and there shall be a third-party answer, if a third-party complaint is served. *No other pleading shall be allowed* . . . .

(Emphasis added). The Advisory Commission Comments to Rule 7.01 of the Tennessee Rules of Civil Procedure state that the rule "adopts the federal practice of cutting off pleadings after complaints and answer, except that a reply or answer by plaintiff is allowed in cases of counterclaim and cross-claim, and a third-party answer is allowed where a third-party complaint is filed."

In this case, Cherokee filed a complaint, and the City filed an answer. The City's answer did not contain a counterclaim. Under Rule 7.01, "no other pleading" was permitted at that point. Accordingly, Cherokee's motion for judgment on the pleadings was filed after the pleadings were closed.

■ The City argues that the trial court should have treated the motion as a motion for summary judgment because it contained a copy of the ordinance being challenged by Cherokee, as well as copies of general city charter and city code provisions. Cherokee maintains that the trial court did not err in considering a copy of the ordinance underlying this action or any other materials.

Rule 12.03 of the Rules of Civil Procedure states that if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . ." In this case, Cherokee's complaint challenged the validity of emergency ordinance No. 0–119–00. Cherokee's complaint and the City's answer referred to the emergency ordinance in great detail. Cherokee and the City submitted certified copies of the ordinance for the trial court's consideration. In our view, copies of the emergency ordinance under consideration and the related city charter and code provisions did not raise matters of law or fact that were "outside the pleadings." Tenn. R. Civ. P. 12.03. Accordingly, the trial court did not err in ruling on the motion for judgment on the pleadings.

### Mandamus

The City argues that the trial court erred in issuing a writ of mandamus and that Cherokee failed to exhaust its administrative remedies by not appealing the denial of the demolition permit by the

Building Official to the Building Board of Adjustments and Appeals. Cherokee asserts that a writ of mandamus was appropriate for the issuance of the permit and that the exhaustion of remedies doctrine was inapplicable under this circumstances of this case.

A writ of mandamus is an extraordinary remedy that may be issued where a right has been clearly established and "there is no other plain, adequate, and complete method of obtaining the relief to which one is entitled." *Meighan v. U.S. Sprint Communications Co.*, 942 S.W.2d 476, 479 (Tenn.1997). Although most often addressed to ministerial acts, mandamus may be addressed to discretionary acts when an act is " 'arbitrary and oppressive' " or where there has been a " 'plainly palpable' " abuse of discretion. *Id.* (quoting *Peerless Constr. Co. v. Bass,* 158 Tenn. 518, 14 S.W.2d 732, 733 (1929)).

In our view, the trial court had the authority to issue a writ of mandamus in this case. *State ex rel. Poteat v. Bowman,* 491 S.W.2d 77, 80 (Tenn.1973) (mandamus is proper to challenge an ordinance as not properly adopted); *see also State ex rel. SCA Chemical Waste Services, Inc. v. Konigsberg,* 636 S.W.2d at 434 (mandamus may be employed "to determine the constitutional validity of a statute, ordinance or other legal directive that on its face requires that the defendant official shall not perform the act sought to be required. . . ."). The record shows that Cherokee challenged the validity of the emergency demolition ordinance on a number of grounds; it did not, however, challenge the Building Official's discretion in denying a demolition permit based on the ordinance. As a result, an administrative appeal to the Building Board of Adjustments and Appeals, which would have been limited to review of the Building Official's discretion, would have afforded no review over the key issues and would have afforded no possible remedy. As this Court has explained, the issuance of mandamus may be prevented only if another remedy is "equally as convenient, complete, beneficial, and effective as mandamus," and is "sufficiently speedy to prevent material injury." *Meighan,* 942 S.W.2d at 479.

Accordingly, we hold that the trial court properly issued a writ of mandamus in this case.

## CONCLUSION

After reviewing the record and applicable authority, we hold that the emergency demolition ordinance was a zoning ordinance that was not enacted in accordance with statutory zoning law requiring planning, notice, and public hearings, *see* Tenn. Code Ann. §§ 13–7–201–211, or the Tennessee Historic Zoning Act, *see* Tenn.Code Ann. §§ 13–7–401–410, and therefore was invalid. In addition, we conclude that there was no error in failing to join indispensable parties, that there was no error in granting the motion for judgment on the pleadings, and that there was no error in issuing a writ of mandamus. Accordingly, we reverse the Court of Appeals' judgment and reinstate the trial court's judgment, which issued a writ of mandamus requiring the issuance of a demolition permit to the appellant, Cherokee Country Club, Inc. Costs of this appeal are taxed to the appellee, City of Knoxville, for which execution may issue if necessary.