IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Submitted on Briefs April 12, 2010

DR. WILLIAM P. HARMAN
v.
THE UNIVERSITY OF TENNESSEE

Appeal from the Chancery Court for Hamilton County
No. 08-0698      Howell N. Peoples, Chancellor

No. E2009-02139-COA-R3-CV - FILED JUNE 16, 2010

This appeal involves the Tennessee Public Protection Act. The plaintiff professor was a department head at the defendant university. As the department head, the plaintiff evaluated a subordinate professor. The dean of the university instructed the plaintiff to remove negative information from the evaluation; the plaintiff refused. The plaintiff was then removed from his position as department head. He continued at the university as a tenured professor. The plaintiff sued the university asserting a claim under the Public Protection Act, alleging that he was discharged or terminated for refusing to participate in or remain silent about illegal activities. The trial court granted the university's motion for judgment on the pleadings on the basis, *inter alia*, that the plaintiff was neither terminated nor discharged. The plaintiff now appeals. We affirm, concluding that the removal of the plaintiff from his position as department head, when he remained employed as a professor, is not a termination or discharge under the Public Protection Act.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Randall D. Larramore, Chattanooga, Tennessee, for the appellant, Dr. William P. Harman

Brian A. Lapps, Jr., Knoxville, Tennessee, for the appellee, The University of Tennessee

# OPINION

## FACTS AND PROCEDURAL HISTORY

In May 2001, Defendant/Appellee The University of Tennessee ("the University") hired Plaintiff/Appellant Dr. William P. Harman ("Dr. Harman").[1] Dr. Harman served as a tenured professor and also as the Head of the Department of Philosophy and Religion ("the Department") in the University's College of Arts and Sciences at the Chattanooga campus.

As a department head, Dr. Harman routinely reviewed the academic credentials and professional performance of the faculty members in his Department, including assistant professor Dr. Talia Welsh ("Dr. Welsh"). Dr. Welsh served as an assistant professor in the Department for about six years. She was scheduled for tenure consideration in the spring of 2008. As the Department Head, Dr. Harman had numerous criticisms of Dr. Welsh's professional conduct, including unannounced absences from the classroom, an inappropriate relationship, and misrepresentations in her resume, her prior performance evaluations, and her application for a professorship. Dr. Harman also believed that Dr. Welsh had taken credit for publications that later proved to be nonexistent. Consequently, in her year-end evaluation for 2007, Dr. Harman gave Dr. Welsh a poor review. His evaluation included the above allegations.

When the Dean of the College of Arts and Sciences learned of Dr. Harman's 2007 evaluation of Dr. Welsh, the Dean ordered Dr. Harman to remove all negative information from the written evaluation. Dr. Harman refused and told the Dean that he did not intend to remain silent about Dr. Welsh's conduct. After a meeting, Dr. Harman sent the Dean an email stating: "I cannot any longer obey orders to cover up professional malfeasance on the part of any member of this department, and I cannot agree to having such information suppressed."

In response, the Dean asked Dr. Harman to resign from his position as Department Head. Dr. Harman refused to resign and refused to alter Dr. Welsh's evaluation. Dr. Harman was then informed that he would no longer serve as Department Head, effective at the end of the academic year. After the end of the academic year, Dr. Harman no longer served as a Department Head, but continued in his capacity as a tenured professor. Dr. Harman's removal as Department Head caused him a significant loss of income.

---

[1]Because this is an appeal from an order granting judgment on the pleadings, we recite the facts as alleged by Dr. Harman in his complaint. *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 352 n.1 (Tenn. 2008) (citing *Lanier v. Rains*, 229 S.W.3d 656, 660 (Tenn. 2007); *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d 466, 470 (Tenn. 2004)).

In August 2008, Dr. Harman filed this lawsuit against the University. In his complaint, he contended that the University violated Tennessee's Public Protection Act, codified at Tennessee Code Annotated § 50-1-304,[2] by terminating him for refusing to alter official documents and refusing to remain silent about academic fraud.[3] Dr. Harman sought damages for lost income, mental pain and suffering, embarrassment, and humiliation.

In its answer, the University denied that Dr. Harman had been discharged or terminated from his employment and denied that he refused to participate in or remain silent about "illegal activities" within the meaning of Section 50-1-304.[4] On these grounds, the University later filed a motion for judgment on the pleadings, pursuant to Rule 12.03 of the Tennessee Rules of Civil Procedure.[5]

After a hearing, the trial court granted the motion and entered an order dismissing Dr. Harman's complaint. In the order, the trial court concluded that, under the facts alleged in the complaint, Dr. Harman had not been discharged or terminated from his employment and had not refused to participate in or remain silent about illegal activities, within the meaning of the Public Protection Act. Dr. Harman now appeals.

---

[2]Tennessee Code Annotated § 50-1-304 provides in pertinent part: "No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." T.C.A. § 50-1-304(b) (2009 Supp.).

[3]Dr. Harman's complaint also asserted a claim under the common law for retaliatory discharge and a claim for the University's purported violation of his "rights under the First Amendment to the Constitutions of the United States of America and of the State of Tennessee." In granting judgment to the University, the trial court found that these claims were barred under the doctrine of sovereign immunity. On appeal, Dr. Harman does not challenge the trial court's ruling on these claims.

[4]This is a defined term under the Act. Section 50-1-304(a)(3) states: " 'Illegal activities' means activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." T.C.A. § 50-1-304(a)(3) (2009 Supp.).

[5]Rule 12.03 of the Tennessee Rules of Civil Procedure provides:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

TENN. R. CIV. P. 12.03.

On appeal, Dr. Harman argues that the trial court erred in (1) concluding that he was not discharged or terminated within the meaning of Tennessee Code Annotated § 50-1-304 and (2) concluding that he had not alleged illegal activities within the meaning of Tennessee Code Annotated § 50-1-304.

In reviewing a trial court's grant of judgment on the pleadings under Rule 12.03 of the Tennessee Rules of Civil Procedure, we construe the complaint in favor of the plaintiff "by taking all factual allegations in the complaint as true and by giving the plaintiff the benefit of all the inferences that can be reasonably drawn from the pleaded facts." *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 352 n.1 (Tenn. 2008) (citing *Lanier v. Rains*, 229 S.W.3d 656, 660 (Tenn. 2007); *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d 466, 470 (Tenn. 2004)). Conclusions of law are not admitted and judgment on the pleadings should not be granted "unless the moving party is clearly entitled to judgment." *Cherokee Country Club, Inc.*, 152 S.W.3d at 470 (Tenn. 2004) (quoting *McClenahan v. Cooley*, 806 S.W.2d 767, 769 (Tenn. 1991)). This determination is a question of law, and we review the trial court's conclusions of law *de novo* with no presumption of correctness. *Frye v. Blue Ridge Neuroscience Ctr., P.C.*, 70 S.W.3d 710, 713 (Tenn. 2002) (citing *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993)); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000) (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)).

## ANALYSIS

Dr. Harman argues first that the trial court erred in dismissing his complaint because he sufficiently alleged that he was discharged or terminated from his employment as a University Department head, emphasizing that his role as a Department head was "separate employment with separate terms and conditions" from his employment in his role as a tenured professor. Consequently, he contends that the allegations of his complaint sufficiently demonstrate that he was discharged or terminated within the "black letter of the statute."

Second, Dr. Harman contends that his complaint sufficiently alleges that his discharge was for refusing to participate in or remain silent about illegal activities, within the meaning of the Public Protection Act. He argues that altering the year-end evaluation of Dr. Welsh would violate Tennessee Code Annotated §§ 39-14-136,[6] 4-18-103,[7] and 39-16-504.[8] As

---

[6]Tennessee Code Annotated § 39-14-136 provides in pertinent part:

(continued...)

such, he asserts that the allegations in his complaint sufficiently show that he refused to participate or remain silent about illegal activities.

The employment-at-will doctrine is a bedrock of the Tennessee common law. *VanCleave v. Reelfoot Bank*, No. W2008-01559-COA-R3-CV, 2009 WL 3518211, at *3 (Tenn. Ct. App. Oct. 30, 2009), *no perm. app.* (citing *Franklin v. Swift Transp. Co., Inc.*, 210 S.W.3d

---

[6](...continued)
> A person commits the offense of falsifying educational and academic documents who buys, sells, creates, duplicates, alters, gives or obtains a diploma, academic record, certificate of enrollment or other instrument which purports to signify merit or achievement conferred by an institution of education with the intent to use fraudulently that document or to allow the fraudulent use of the document.

T.C.A. § 39-14-136(a) (2006).

[7]Tennessee Code Annotated § 4-18-103 provides in pertinent part:

> (a) Any person who commits any of the following acts shall be liable to the state or to the political subdivision for three (3) times the amount of damages that the state or the political subdivision sustains because of the act of that person. A person who commits any of the following acts shall also be liable to the state or to the political subdivision for the costs of a civil action brought to recover any of those penalties or damages, and shall be liable to the state or political subdivision for a civil penalty of not less than two thousand five hundred dollars ($2,500) and not more than ten thousand dollars ($10,000) for each false claim:
> . . . .
> (2) Knowingly makes, uses, or causes to be made or used a false record or statement to get a false claim paid or approved by the state or by any political subdivision;
> . . . .
> (9) Knowingly makes, uses, or causes to be made or used any false or fraudulent conduct, representation, or practice in order to procure anything of value directly or indirectly from the state or any political subdivision.

T.C.A. § 4-18-103(a) (2005).

[8]Tennessee Code Annotated § 39-16-504 provides in pertinent part:

> (a) It is unlawful for any person to:
> (1) Knowingly make a false entry in, or false alteration of, a governmental record;
> (2) Make, present, or use any record, document or thing with knowledge of its falsity and with intent that it will be taken as a genuine governmental record; or
> (3) Intentionally and unlawfully destroy, conceal, remove or otherwise impair the verity, legibility or availability of a governmental record.

T. C. A. § 39-16-504(a) (2006).

521, 527 (Tenn. Ct. App. 2006)). Under the doctrine, an employer may terminate the employment of a person employed for an indefinite term "at any time, for good cause, bad cause, or no cause at all." *Id.* (citing **Franklin**, 210 S.W.3d at 527).

This rule, however, is not absolute; restrictions have been placed on the right of an employer to discharge an employee. The Tennessee Public Protection Act, Tennessee Code Annotated § 50-1-304, codifies an exception to the employment-at-will doctrine. Subsection (b) of this Act provides that "[n]o employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." T.C.A. § 50-1-304(b) (2009 Supp.). To prevail under the Public Protection Act, a plaintiff must establish "(1) his status as an employee of the defendant employer; (2) his refusal to participate in, or remain silent about, 'illegal activities' as defined under the Act; (3) his termination; and (4) an exclusive causal relationship between his refusal to participate in or remain silent about illegal activities and his termination." **Franklin**, 210 S.W.3d at 528. As set forth in subsection (a)(3), the term "illegal activities" is defined as "activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." T.C.A. § 50-1-304(a)(3) (2009 Supp.).

In this case, the trial court found that Dr. Harman had not pled sufficient facts to show either that he was discharged or terminated, or that he refused to participate in or remain silent about illegal activities. Both are necessary elements of a claim under the Public Protection Act. Therefore, the failure to establish either is fatal to Dr. Harman's case. We consider first whether Dr. Harman was "discharged" or "terminated" from his employment within the meaning of the Public Protection Act.[9]

In this case, Dr. Harman was employed by the University as a tenured professor and as the head of a University department. Allegedly due to his refusal to alter Dr. Welsh's evaluation, Dr. Harman was removed as head of his department; as a result, he experienced a significant loss of income. After being removed from the department head position, Dr. Harman continued his employment with the University in his capacity as a tenured professor, albeit at a reduced rate of compensation.

Dr. Harman asserts that his roles as professor and Department head were "separate employment." The University argues that Dr. Harman simply received a demotion. In support of its position, the University cites, *inter alia*, **Howard v. Life Care Ctrs. of Am., Inc.**, No. E2004-00212-COA-R3-CV, 2004 WL 1870067 (Tenn. Ct. App. Aug. 20, 2004), *no perm app.* In **Howard**, the plaintiff employee was employed by the defendant as the medical director of the defendant's Chattanooga facilities. *Id.* at *1. The parties executed

---

[9]Neither "discharge" nor "termination" are defined terms under the Public Protection Act.

a contract that provided for a one-year term of employment. During the course of his employment, the plaintiff employee learned of practices used by the defendant that he believed violated Medicare guidelines. When the employer ignored the employee's complaints about these practices, the employee reported the alleged Medicare violations to the Office of Inspector General. The Office of Inspector General in turn made an inquiry into the employer's practices. The employer then notified the plaintiff employee that his employment contract would not be renewed upon its expiration. *Id.*

The employee sued the employer, asserting a claim for retaliatory discharge under the Public Protection Act. The employer's motion for summary judgment was granted on the basis that the employee was not discharged or terminated. The employee appealed.

On appeal, this Court held that the employee was neither discharged nor terminated from his employment within the meaning of the Public Protection Act. *Id.* at *5. The ***Howard*** Court stated: "Tenn Code Ann. § 50-1-304 requires that the employee be 'terminated'. This would clearly require an act on the part of the employer to end the employment relationship." *Id.* Because the employment relationship ended merely by expiration of the employment contract, rather than by an affirmative act by the employer, the ***Howard*** Court concluded that the employer had not terminated the employment of the employee.

Dr. Harman distinguishes ***Howard*** from his case at Bar in that his position as a department head was not pursuant to a contract that was due to expire. True enough, but this fact does not undermine the ***Howard*** Court's conclusion that discharge or termination of employment under the Public Protection Act means an "end [to] the employment relationship." *Id.* Here, Dr. Harman's department head title was removed, his responsibilities were reduced, and his compensation was adversely affected. Black's Law Dictionary defines "demote" as "[t]o lower (a person) in rank, position, or pay." BLACK'S LAW DICTIONARY 444 (7th ed. 1999). The University's actions amount to a demotion. The language in the Public Protection Act plainly requires the plaintiff to show that he was "discharged or terminated" from his employment. T.C.A. § 50-1-304(b) (2009 Supp.). A demotion is not actionable under the Act. ***See Clark v. Eagle Sys., Inc.*** 927 P.2d 995 (Mont. 1996) (holding that demotion does not qualify as termination under Montana retaliatory discharge statute). Because Dr. Harman was neither discharged nor terminated from his employment, his complaint fails to state a necessary element of a claim under Tennessee's Public Protection Act.[10] Therefore,

---

[10]Because Dr. Harman did not resign his employment with the University, we do not address whether a constructive discharge would be actionable under the Public Protection Act. ***See Walker v. City of Cookeville***, No. M2002-01441-COA-R3-CV, 2003 WL 21918625, at *7-9 (Tenn. Ct. App. Aug. 12, 2003), *no perm. app*.

the trial court did not err in granting judgment in favor of the University. This holding pretermits all other issues on appeal.

## CONCLUSION

The decision of the trial court is affirmed. The costs of this appeal are taxed to the Appellant Dr. William P. Harman, and his surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE