IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 4, 2013

## DAVID KWASNIEWSKI v. SCOTT AND DONNA LEFEVERS

**Appeal from the Circuit Court for Wilson County**
**No. 2011CV30     John D. Wootten, Jr., Judge**

---

**No. M2012-01802-COA-R3-CV - Filed July 30, 2013**

---

Lessor and Lessee executed a lease agreement that gave Lessee an option to purchase the rented property during a two-year period. A purchase and sale agreement was executed the same day outlining the terms of the sale if the option were exercised. Lessee did not exercise the option during the period specified, and Lessor sued the Lessee for breaching the purchase and sale agreement. Lessee filed a motion for judgment on the pleadings, which the trial court granted. Lessor appealed, and we affirm the trial court's judgment dismissing the complaint. Because Lessee did not exercise the option to purchase the property, the purchase and sale agreement did not become operative.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Thomas B. Luck, Nashville, Tennessee, for the appellant, David Kwasniewski.

G. Frank Lannom, Alex Bird, Lebanon, Tennessee, for the appellees, Scott and Donna Lefevers.

## OPINION

David Kwasniewski owns a parcel of real property in Mount Juliet that he agreed to lease to Team Marine, Inc. for a period of three years. Mr. Kwasniewski and Team Marine entered into a Commercial Lease Agreement on June 8, 2007 (the "Lease Agreement"). The term of the lease was from August 1, 2007 through July 31, 2010. Rent was set at $3,500 per month. Scott Lefevers was the president of Team Marine, and he signed the lease on behalf of Team Marine. At the end of the Lease Agreement was a paragraph called "**Special Stipulations**," which stated:

The following Special Stipulations, if conflicting with any preceding paragraph, shall control:

Tenant has a 24 month option to purchase or to renew lease at $4,500.00 per month of which $1,000.00 of the monthly payment will be credited to the Buyers at closing. Buyer has the option to purchase said property during the lease period. With no prepayment penalty due to Seller. Seller/Landlord retains rights of Billboard Sign Lease until closing of sale of property, whereby lease transfers to Buyer. Seller will be allowed a drop off area for glass to be dropped off to a pick up truck.

The owner and Scott and Donna Lefevers filled out a Commercial Purchase and Sale Agreement ("P&S Agreement") that was also dated June 8, 2007. The property that was the subject of the P&S Agreement was the same property that Team Marine agreed to lease. The purchase price was listed at $1,200,000. Mr. Kwasniewski was identified as "Seller" and Mr. and Mrs. Lefevers were identified as "Buyer." The amount of earnest money was listed as "$0." In a section called "**Closing**" the document stated:

This transaction shall be consummated ("Closing") at the office of __To Be Determined__ on __or before August 1, 2012__, or at such other time and places the parties may agree upon in writing (the "Closing Date").

The P&S Agreement included a section called "**Remedies**." This section stated:

In the event of a breach of this Agreement, the non-breaching party may pursue all remedies available at law or equity except where the parties have agreed to arbitrate. Notwithstanding the above, if Buyer breaches Buyer's obligations or warranties herein Seller shall have the option to request that Holder pay the Earnest Money to Seller, which if disbursed to Seller by Holder shall constitute liquidated damages in full settlement of all claims by Seller. Such liquidated damages are agreed to by the parties not to be a penalty and to be a good faith estimate of Seller's actual damages, which damages are difficult to ascertain.

In a section called "**Exhibits and Addenda**" the P&S Agreement provided:

All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement. **If any such exhibit or addendum conflicts with any preceding paragraph, said exhibit or addendum shall control**:

Exhibit "A" Legal Description
Exhibit "B" Lease Agreement between Team Marine and/or their assignees
and David Kwasniewski
Exhibit "C" Billboard Sign Lease Agreement

The following section of the P&S Agreement was called "**Special Stipulations**," and this section stated:

The following Special Stipulations, if conflicting with any preceding paragraph, shall control:

Seller agrees per Exhibit "B" (Lease Agreement) that the sum of one thousand dollars ($1000.00) of the monthly rental payments shall be credited to Buyers at closing.

If Buyer chooses not to purchase said property, Buyer will forfeit all payments made to Seller/Landlord.

Buyer will pay Seller an additional 5% interest on the unpaid balance at closing.

Billboard Sign Lease will be transferred to Buyer at closing, with no extra charge to the Buyer.

Property is being sold AS IS

Mr. Lefevers delivered a handwritten and signed note dated May 12, 2010, to Mr. Kwasniewski that stated:

I Scott Lefevers represent Team Marine. We are going out of business and will vacate 8220 Central Pike by July 31, 2010. I have due to lack of business no intent to purchase property.

Mr. Kwasniewski filed a complaint against Mr. and Mrs. Lefevers in January 2011 in which he alleged they breached the P&S Agreement by anticipatory repudiation and were liable to Mr. Kwasniewski for the difference between the agreed upon sales price of the

Property and the current fair market value of the Property.[1]  Mr. and Mrs. Lefevers filed an answer denying liability followed by a motion for judgment on the pleadings.  The trial court granted the defendant's motion, stating:

> Based upon the review of the pleadings of this cause, court finds that the Defendant's Motion for Judgment on the pleadings as to the Third Cause of Action, "Breach of Contract" is well granted and the cause of action is hereby dismissed.

## ISSUES ON APPEAL

On appeal, Mr. Kwasniewski argues the trial court erred for the following reasons: (1) he properly alleged the elements of a breach of contract case in his complaint and he was not limited to the remedy the defendants contend he has already received; (2) a question of fact exists regarding whether the amount of money paid for renting the Property was the fair market price; (3) the court must determine whether the P&S Agreement contained a remedy provision, and if so, whether Mr. Kwasniewski recovered that remedy; and (4) the P&S Agreement contains an ambiguity that must be resolved by a trier of fact.

The defendants contend the Lease Agreement, which was incorporated into the P&S Agreement, gave Mr. Lefervers the option to purchase the Property, which he chose not to exercise.  Thus, they argue, they have not breached the P&S Agreement and the trial court properly granted their motion for judgment on the pleadings.

## ANALYSIS

A party may file a motion for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial . . . ."  Tenn. R. Civ. P. 12.03.  In reviewing a trial court's ruling on a motion for judgment on the pleadings, the appellate court must accept as true "all well-pleaded facts and all reasonable inferences drawn therefrom" alleged by the party opposing the motion.  *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d 466, 470 (Tenn. 2004) (quoting *McClenahan v. Cooley*, 806 S.W.2d 767, 769 (Tenn. 1991)).  Judgment on the pleadings should not be granted unless it is clear the moving party is entitled to judgment.  *Cherokee Country Club*, 806 S.W.3d at 470 (citing *McClenahan*, 806 S.W.2d at 769).

---

[1]Mr. Kwasniewski also filed causes of action against Mr. Lefevers for conversion and destruction of personal property, but Mr. Kwasniewski voluntarily dismissed these causes of action before filing his notice of appeal.

The resolution of this case is based on the interpretation of the parties' contracts. "The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern." *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002). The purpose of interpreting a written contract is to ascertain and give effect to the contracting parties' intentions, and where the parties have reduced their agreement to writing, their intentions are reflected in the contract itself. *Id.*; *Frizzell Constr. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 85 (Tenn. 1999). "The intent of the parties is presumed to be that specifically expressed in the body of the contract . . . ." *Planters Gin Co.*, 78 S.W.3d at 890. Therefore, the court's role in resolving disputes regarding the interpretation of a contract is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the language used. *Guiliano v. Cleo*, 995 S.W.2d 88, 95 (Tenn. 1999); *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975). Where the language of the contract is clear and unambiguous, its literal meaning controls the outcome of contract disputes. *Planters Gin Co.*, 78 S.W.3d at 890.

Thus, courts defer to the contracting process by enforcing written contracts, which establish the rights and obligations of the parties, according to their plain terms without favoring either contracting party. *Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985); *Hardeman Cnty. Bank v. Stallings*, 917 S.W.2d 695, 699 (Tenn. Ct. App. 1995). Courts must avoid rewriting an agreement under the guise of interpreting it. *Marshall v. Jackson & Jones Oil, Inc.*, 20 S.W.3d 678, 682 (Tenn. Ct. App. 1998). The courts will not make a new contract for parties who have spoken for themselves, *Petty v. Sloan*, 277 S.W.2d 355, 359 (Tenn. 1955), and will not relieve parties of their contractual obligations simply because these obligations later prove to be burdensome or unwise. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 223 (Tenn. Ct. App. 2002).

Turning to the contracts at issue, the P&S Agreement incorporated by reference the Lease Agreement. The Lease Agreement expressly provided Mr. Lefevers the option to purchase the Property during the lease period. The Court of Appeals has explained the meaning of an option as follows:

> An option is a unilateral contract whereby the optionor for a valuable consideration grants the optionee a right to make a contract of purchase but does not bind the optionee to do so; the optionor is bound during the life of the option, but the optionee is not. It is a continuing offer to sell irrevocable during the option period. Its transition into a contract to purchase can be effected only by an unqualified unconditional acceptance in accordance with the terms and time specified.

*Jones v. Horner*, 260 S.W.2d 198, 199 (Tenn. Ct. App. 1953) (citations omitted); *see Beale Street Dev. Corp. v. Miller*, 2003 WL 1618068, at *3 (Tenn. Ct. App. Mar. 20, 2003) (option to purchase is unilateral contract that becomes contract to purchase upon unqualified unconditional acceptance by option holder).

Both parties agree that Mr. Lefevers did not exercise his option to purchase the Property during the lease period. A plain reading of the Lease Agreement and the P&S Agreement reveals that the P&S Agreement was prepared to outline the terms of the sale of the Property in the event Mr. Lefevers exercised his option to purchase the Property during the lease period. Since Mr. Lefevers did not exercise his option, the P&S Agreement does not come into play. Thus, regardless of any remedy or other provision contained in the P&S Agreement, the defendants are not in breach of the P&S Agreement because they did not exercise the option to purchase the Property.

Mr. Kwasniewski does not allege any breach of the Lease Agreement in his Complaint. Therefore, he has no claim regarding the amount of rent Mr. Lefevers paid.

Because the Lefeverses are not in breach of the P&S Agreement, they are entitled to judgment as a matter of law. We therefore affirm the trial court's judgment granting Mr. and Mrs. Leferves' motion for judgment on the pleadings and dismissing Mr. Kwasniewski's Complaint.

### CONCLUSION

We affirm the trial court's judgment granting the Leferveses' motion for judgment on the pleadings. Costs of this appeal shall be assessed against the appellant, David Kwasniewski, for which execution shall issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE