# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### August 24, 2011 Session

# FRED H. GILLHAM v. CITY OF MT. PLEASANT, ET AL.

**Appeal from the Chancery Court for Maury County**
**No. 10222     Robert L. Jones, Judge**

---

**No. M2010-02506-COA-R3-CV - Filed March 29, 2012**

---

A residential property owner challenged the procedures used by a planning commission and city commission in granting a rezoning application submitted by two industrial companies. The companies asked that the zoning for 95.2 acres of land be changed from agricultural to special impact industrial for the purpose of developing a landfill to dispose of salt cake produced as a byproduct of their smelting businesses. The property owner also asserted that two of the commissioners had a conflict of interest and that their participation granting the application invalidated the procedure. The defendants filed a motion to dismiss and motion for judgment on the pleadings. The trial court granted the defendants' motions after concluding the planning commission and city commission complied with the procedural requirements of Tenn. Code Ann. §§13-7-203(a) and 6-20-215 and that the two commissioners had no conflict of interest since they had no ownership interest in the rezoning applicants. We affirm the trial court's judgment dismissing the property owner's complaint.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Roger Alan Maness, Clarksville, Tennessee, for the appellant, Fred H. Gillham.

E. Leith Marsh, Nashville, Tennessee, for the appellees, City of Mt. Pleasant, Tennessee, Mt. Pleasant Planning Commission, Richard Hendrix, and Maury Colvett; M. Clark Spoden and Corinne Elizabeth Martin, Nashville, Tennessee for the appellees, Tennessee Aluminum Processors, Inc., and Smelter Services Corporation.

**OPINION**

The complainant in this zoning dispute is Fred A. Gillham, a residential landowner in Mt. Pleasant, Tennessee, who lives near real property that was rezoned from Agricultural to M-3 Special Industrial. He filed a complaint challenging the procedure the Planning Commission and City Commission followed in rezoning the land at issue and named the companies seeking the rezoning as well as the city and individual commissioners as defendants. In response to a motion to dismiss and motion for judgment on the pleadings, the trial court dismissed Mr. Gillham's complaint. Mr. Gillham appeals the trial court's dismissal of his complaint.

**I. MR. GILLHAM'S COMPLAINT**

Mr. Gillham asserted the following facts in his complaint. Tennessee Aluminum Processors, Inc. ("TAP") and Smelter Services Corporation ("Smelter Services") operate aluminum smelting businesses in Mt. Pleasant, Tennessee. The smelting process produces a granular mineral by-product commonly known as salt cake. In December 2009 TAP and Smelter Services submitted an application to the Mt. Pleasant Planning Commission to rezone 95.2 acres of land on Hoover Mason Road from Agricultural to M-3 (Special Impact Industrial) for the purpose of using the property as a landfill for the disposal of their salt cake by-product.

The Planning Commission met on January 5, 2010, to consider TAP and Smelter Services' request. The Planning Commission voted at that time to forward TAP and Smelter Service's request to the City Commission with an unfavorable recommendation.

The City Commission met two weeks later, on January 19, and during that session the commissioners considered TAP and Smelter Service's request, which by that time had become known as Ordinance 2010-906. The ordinance passed on the first reading by a vote of 3 to 2. A public hearing was held nearly a month later, on February 16. A second reading of the ordinance followed the public hearing, and the ordinance passed again by a vote of 3 to 2. The two individual commissioners named as defendants, Richard Hendrix and Maury Colvett, voted in favor of the ordinance on both occasions.

The general manager of the Mt. Pleasant Power System ("MPPS"), Derek Church, prepared a document dated January 5, 2010, that was entitled "The Financial Impact on the Mount Pleasant Power System Due to the Loss of Electrical Power Sales to Smelter Service Corporation and Tennessee Aluminum Processors." In the first paragraph of the document Mr. Church wrote:

The following study was initiated by the concern of any further loss of sales, particularly to our two largest consumers of electric power, namely Tennessee Aluminum Processors and Smelter Services Corporation. This study is merely a representation of the financial impact that MPPS would experience based on the loss of electric power sales and in no way is an indicator of the beliefs or support by MPPS or its Board of Directors of any project that is associated with these industries.

Mr. Church stated in this document that if TAP and Smelter Services were to relocate their businesses elsewhere, away from Mt. Pleasant, the MPPS would suffer a "devastating financial impact." Mr. Church estimated the electric power rates would increase by 31% to the remaining customer base, which could be minimized if the city were able to attract other manufacturing facilities or large electric power consumers. Mr. Church explained that he prepared the analysis "to ready the Mount Pleasant Power System and its customers in the event of the additional loss of revenue."

Defendant Richard Hendrix is the Mayor of Mt. Pleasant and is a member of the City Commission. As Mayor, Mr. Hendrix sits on the board of the MPPS. Defendant Maury Colvett is employed by the MPPS and is also a member of the City Commission.

Mr. Gillham alleged in his complaint that Mr. Church's document was a "position paper" that contained factual misstatements and was "a lobbying effort generated to created irrational fear in the mind of the public and provide cover for the vote of HENDRIX and COLVETT, in favor of the rezoning application." Mr. Gillham further asserted that "[i]t is reasonable to conclude that said position paper was produced at the behest of HENDRIX who sits as a member of the power board."

Debbie McMullin, the City Manager and Chief Financial Officer of Mt. Pleasant, prepared a Memorandum dated January 20, 2010, that was addressed to the Mayor, Vice-Mayor, and Commissioners. Ms. McMullin began her Memorandum by stating:

First of all, let me preface this memo by saying I am in no way trying to influence your vote either way on the upcoming "landfill" issue. . . . The entire purpose of this memo is to fulfill my duty as the Chief Financial Officer for the City to be sure you have all the facts and have weighed all the factors so you can make an informed decision when you cast your vote. I am in no way telling you I believe the two companies involved in this matter will leave Mt. Pleasant if they don't get the landfill. I am simply making you aware of the financial fallout of such a move if it were to occur.

In her memorandum, Ms. McMullin stated that TAP is one of the top ten taxpayers to the city, and the loss of both TAP and Smelter Services as taxpayers would result in the loss of $30,000 in tax revenue. Ms. McMullin indicated every remaining taxpayer in Mt. Pleasant would have to pay 5% more in taxes to make up for this loss. She also stated that TAP and Smelter Services contribute so much to the city's water and sewer budget that losing their revenue would require a 5% increase in the water rate and a 2% increase in the sewer rate to maintain the same water and sewer budget. Finally, Ms. McMullin stated that TAP contributes $108,000 annually to the city's gas revenue, and gas rates for remaining customers would increase by 5% to recover that lost revenue if TAP were to relocate away from Mt. Pleasant.

Mr. Gillham made assertions in his complaint about Ms. McMullin's memorandum similar to those he made about Mr. Church's memorandum. He alleged that this memorandum "is transparently a lobbying paper intended for the purpose of creating irrational fear that TAP and SS would close their Mt. Pleasant operations if the rezoning application were not approved and to provide cover for the vote of HENDRIX and COLVETT." As with Mr. Church's document, Mr. Gillham asserted "[i]t is reasonable to conclude that the McMullin 'Memo' was produced at the request of HENDRIX."

Mr. Gillham asserted both Mr. Hendrix and Mr. Colvett had a conflict of interest with respect to the rezoning application. With regard to Mr. Hendrix, Mr. Gillham complained the City "illegally became directly identified with and an advocate for the rezoning application of TAP/SS which would purely benefit two (2) private companies and which was opposed by a substantial percentage of its citizenry." Mr. Gillham's complaint with regard to Mr. Colvett is that Mr. Colvett is employed by the MPPS, is subordinate to Mr. Church and Mayor Hendrix, and the MPPS had become an advocate for the rezoning application by the time the City Commission first met on January 5 to consider Ordinance 2010-906.

In addition to alleging that Mr. Hendrix's and Mr. Colvett's conflicts of interest rendered their votes in favor of the application invalid, Mr. Gillham alleged the Planning Commission and the City Commission failed to follow procedural steps required by Mt. Pleasant's zoning ordinance, charter, and state law. Specifically, Mr. Gillham complained the Planning Commission failed to conduct the review required by Mt. Pleasant's zoning ordinance before it submitted TAP and Smelter Services' rezoning application to the City Commission. Mr. Gillham faulted the City Commission for failing to conduct a public hearing on the rezoning application before the ordinance's first reading on January 19.

Finally, Mr. Gillham asserted there was no rational basis for the adoption of the

rezoning application because the state of science and technology relating to industrial landfills has not materially changed since the last time TAP and Smelter Services submitted a similar application for rezoning in 2007.

## II. TRIAL COURT ORDER

The City of Mt. Pleasant, the City Commission, the Planning Commission, Mr. Hendrix, and Mr. Colvett filed a joint motion to dismiss in lieu of an answer, pursuant to Tenn. R. Civ. P. 12.02(6), in which they argued Mr. Gillham had failed to state a claim upon which relief could be granted.[1] TAP and Smelter Services filed a motion for judgment on the pleadings pursuant to Tenn. R. Civ. P. 12.03.

Following a hearing during which it considered both motions, the trial court issued an Order granting the motions and dismissing Mr. Gillham's complaint in its entirety. The court stated the following in its Order:

> Both defense motions . . . contend that the City Commission's procedure of adopting, the disputed ordinance number 2010-906 was legally proper, following two different readings and affirmative majority of votes on January 19, 2010, with a public hearing preceding the second reading and passage. This Court agrees that the procedure was proper under the City's charter and state law. Before any Mt. Pleasant ordinance is properly "adopted" or "enacted," it must receive an affirmative vote of "passage" by a majority of commissioners on two dates at least a week apart with at least fifteen days' notice before a public hearing to be held before enactment. The Plaintiff's theory seems to confuse the distinction between the word "passage" and the word "enacted." The Plaintiff's challenge of the ordinance adoption procedure is without merit.
>
> The Plaintiff also challenges the ordinance on the basis that the Planning Commission failing [sic] to do an adequate "review" of various factors before it vote, [sic] but that requirement is made moot by the majority of the Planning Commission voting against recommending the rezoning application and the City Commission subsequently approving the rezoning ordinance. The final authority to decide a zoning issue rests with the City Commission and the failure of the Planning Commission to follow procedure, even if true, cannot deprive the City Commission of its authority to approve a zoning change, even if opposed by the Planning Commission. If the Plaintiff's legal arguments and

---

[1]In their motion to dismiss, Mr. Hendrix and Mr. Colvett requested that they be dismissed from the complaint, even if Mr. Gillham's action was not dismissed in its entirety, because no relief was sought against them personally.

suggested conclusions were correct, a majority of the Planning Commission could defeat any rezoning effort and deny the City Commission its ultimate authority. This Court therefore concludes that the Plaintiff's legal conclusions as alleged in the Complaint are not legally correct, even if the factual allegations are assumed to be true for purposes of these motions under Rule 12.02(6) and Rule 12.03.

The Defendants next attack the Plaintiff's allegations that the votes of Mayor Hendrix and Commissioner Colvett were not legally cast because of conflicts of interest, but those conclusions are not legally correct for the facts alleged. Specifically, there are no allegations in the complaint that the mayor or the commissioner had any interest in the two corporations owning the subject property and seeking rezoning. It is apparently true that Commissioner Colvett works for the Mt. Pleasant Power System and that Mayor Hendrix serves on the power system's board, but the power system is not the entity seeking a rezoning. [Mr. Gillham] specifically alleges that the Mt. Pleasant Power System is a "branch of" and "owned by" the City. Therefore, there is no conflict of interest between the power system and the city which owns it. There would be a legitimate conflict of interest issue only if the complaint alleged that (1) Mayor Hendrix or Commissioner Colvett had some interest in the Property Owner Defendants or the property itself, or (2) the power system was not a part of the City. Therefore, the conflict of interest issues are without legal merit.

The Defendants are also correct in their contention that this Court may not "second guess" the chief legislative body of the City of Mt. Pleasant in deciding whether or not the City's decision on rezoning was "rational" or otherwise appropriate. Such decisions are not within the jurisdiction of the judicial branch of government.

Mr. Gillham appeals the trial court's dismissal of his complaint and alleges the court erred in almost every ruling it made.[2]

### III. STANDARD OF REVIEW

A motion filed pursuant to Tenn. R. Civ. P. 12.02(6) and a motion filed pursuant to Tenn. R. Civ. P. 12.03 both test the legal sufficiency of the complaint itself. *Webb v.*

---

[2]While not contested in this appeal, the trial court also concluded Mr. Hendrix and Mr. Colvett were "not necessary or even appropriate parties to this civil action" because the complaint sought no specific relief against either individual.

*Nashville Area Habitat for Humanity*, 346 S.W.3d 422, 426 (Tenn. 2011); *Willis v. Dept. of Corrections*, 113 S.W.3d 706, 710 (Tenn. 2003); *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999); *McClenahan v. Cooley*, 806 S.W.2d 767, 769 (Tenn. 1991); *see Timmins v. Lindsey*, 310 S.W.3d 834, 838 (Tenn. Ct. App. 2009) (a defendant's motion for judgment on the pleadings is essentially a motion to dismiss for failure to state a claim upon which relief can be granted) (citing *Waldron v. Delffs*, 988 S.W.2d 182, 184 (Tenn. Ct. App. 1998)). Such motions do not test the strength of the plaintiff's proof. *Highwoods Props v. City of Memphis*, 297 S.W.3d 695, 700 (Tenn. 2009)*; Willis*, 113 S.W.3d at 710; *Doe*, 2 S.W.3d at 922; *Timmins*, 310 S.W.3d at 838-39.

A complaint should not be dismissed pursuant to Rule 12.02(6) or Rule 12.03 unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Willis*, 113 S.W.3d at 710; *Timmins*, 310 S.W.3d at 838; *Sullivant v. Americana Homes*, 605 S.W.2d 246 (Tenn. Ct. App. 1980).

The moving party admits the truth of all the relevant and material factual allegations in the complaint for purposes of such a motion, but asserts that no cause of action arises from those facts. *Brown v. Tenn. Title Loans*, 328 S.W.3d 850, 854 (Tenn. 2010); *Winchester v. Little*, 996 S.W.2d 818, 821-22 (Tenn. Ct. App. 1998); *Smith v. First Union Nat'l Bank,* 958 S.W.2d 113, 115 (Tenn. Ct. App. 1997). A court reviewing a complaint being tested by a Tenn. R. Civ. P. 12.02(6) or 12.03 motion must construe the complaint liberally in favor of the plaintiff by taking all factual allegations in the complaint as true, and by giving the plaintiff the benefit of all the inferences that can be reasonably drawn from the pleaded facts. *Cherokee Country Club v. City of Knoxville*, 152 S.W.3d 466, 470 (Tenn. 2004); *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997).

On appeal from an order granting a Rule 12.02(6) motion or a Rule 12.03 motion, this court must, like the trial court, presume that the factual allegations in the complaint are true, and we must review the trial court's legal conclusions regarding the adequacy of the complaint *de novo*, with no presumption of correctness. *Brown v. Tenn. Title Loans*, 328 S.W.3d 850, 854 (Tenn. 2010); *Cherokee Country Club*, 152 S.W.3d at 470; *Willis*, 113 S.W.3d at 710; *Stein*, 945 S.W.2d at 716; *421 Corporation v. Metropolitan Government of Nashville and Davidson County*, 36 S.W.3d 469, 479 (Tenn. Ct. App. 2000).

### IV. REVIEW BY THE PLANNING COMMISSION

Mr. Gillham claims that Section 8.400A of Mt. Pleasant's zoning ordinance required the Mt. Pleasant Planning Commission to perform a detailed review of TAP and Smelter Services' application for rezoning the 95.2 acres at issue before issuing a recommendation to the City Commission, regardless of whether the recommendation was favorable or

unfavorable. Mr. Gillham argues the Planning Commission's failure to conduct this review voids the City Commission's ultimate adoption of Ordinance 2010-906.

According to Mr. Gillham's complaint, section 8.400A provides as follows:

At the time the application is filed, a proposed review of the location, design configuration and its impact will be conducted by comparing the proposed use, the preliminary development plan, the operational data, and the environmental assessments to the site location criteria. This review will evaluate whether the proposed use should be permitted through a rezoning to the M-3, Special Impact Industrial District, by weighing public need for and benefit to be derived from against the local impacts which it may cause.

Section 8.400A does not specify by whom the review is to be conducted. It is reasonable to conclude that the Planning Commission is generally the appropriate body to make such a review or evaluation. Tennessee Code Annotated §13-7-204 requires that zoning applications be submitted to the local planning commission before being submitted to the "chief legislative body," such as the City Commission:

The zoning ordinance, including the maps, may from time to time be amended; but no amendment shall become effective unless it is first submitted to and approved by the planning commission or, if disapproved, receives the favorable vote of a majority of the entire membership of the chief legislative body.

Three cases cited by Mr. Gillham confirm that a zoning application must be submitted to a planning commission before being submitted to and adopted by the legislative body of a county or city.[3] *See Edwards v. Allen*, 216 S.W.3d 278, 293 (Tenn. 2007) (county board of commission may not rezone property unless planning commission has first considered zoning change); *Westland West Cmty. Ass'n v. Knox County*, 948 S.W.2d 281, 281-83 (Tenn. 1997) (zoning proposal must first be submitted to regional planning commission before being submitted to county commission); *Haynes v. City of Pigeon Forge, TN*, 883 S.W.2d 619, 622 (Tenn. Ct. App. 1994) (city may not amend zoning ordinance unless proposed amendment is first submitted to planning commission for consideration).

---

[3]While Mr. Gillham cites these cases in support of his argument that the Planning Commission was required to perform a detailed review before the City Commission could act on the rezoning application, the opinions do not address the type of review the Commission must conduct.

Mr. Gillham's complaint confirms that the Planning Commission considered TAP and Smelter Services' rezoning application before forwarding it on to the City Commission, but it does not indicate the procedure the Planning Commission followed before sending it on. Since the Planning Commission considered the application, it must have conducted some sort of "review" or "evaluation" in order to reach its decision to forward the application to the Planning Commission with an unfavorable recommendation.

In any event, we agree with the trial court's conclusion that the issue is irrelevant since the Planning Commission did not vote in favor of recommending the application, and the application was forwarded on to the City Commission for its consideration consistent with the statutory scheme governing zoning amendments. The express language of Tenn. Code Ann. §13-7-204 provides that even if a planning commission recommends disapproval of a proposed zoning amendment, the chief legislative body is authorized to override the planning commission's decision and enact the amendment. Mt. Pleasant's zoning ordinance must comply with, and not contradict, the statutory scheme set forth in Tenn. Code Ann. §§13-7-201 *et seq.*, governing Municipal Zoning. *See* Tenn. Code Ann. §13-7-201(a)(1) (chief legislative body of any municipality may regulate uses of land "in accordance with the conditions and the procedure specified in this part").

Since the City Commission is the body that is authorized to enact zoning amendments, if we were to adopt Mr. Gillham's position, we would be construing the ordinance provision in a way that would allow the Planning Commission to prevent the City Commission from considering a zoning change in the future simply by failing to conduct a particular kind of review. Consequently, we hold the trial court correctly ruled that any deficiency in review by the Planning Commission, even if some deficiency may have occurred, did not affect the City Commission's later approval of TAP and Smelter Services' rezoning application.

## V. PUBLIC HEARING REQUIREMENT

Mr. Gillham acknowledges that a public hearing was held on February 16, 2010, before the second reading of the ordinance, and before the ordinance was enacted. Mr. Gillham contends, however, that the City Commission was required to hold a public hearing before the first reading of Ordinance 2010-906 on January 19.

Tennessee Code Annotated §13-7-203(a), applicable to zoning legislation, provides as follows:

> Before **enacting** the zoning ordinance or any amendment thereof, the chief legislative body shall hold a public hearing thereon, at least fifteen (15) days' notice of the time and place of which shall be published in the official

municipal journal or in a newspaper of general circulation in the municipality. (Emphasis added.)

By its clear language, the statute merely requires that a public hearing be held, after 15 days' public notice, before a zoning amendment is **enacted** into law. The public hearing held by the City Commissioner clearly meets that statutory requirement.

Tennessee Code Annotated §6-20-215 prescribes "ordinance procedure" for specific types of local governments and is applicable to Mt. Pleasant. That statute is not inconsistent with §13-7-203(a) and sets out the procedure necessary before an ordinance may become **enacted** into law.

(a) Every ordinance shall be read two (2) different days in open session before its adoption, and not less than one (1) week shall elapse between first and second readings, and any ordinance not so read shall be null and void. Any city incorporated under chapters 18-22 of this title may establish by ordinance a procedure to read only the caption of an ordinance, instead of the entire ordinance, on both readings. Copies of such ordinances shall be available during regular business hours at the office of the city recorder and during sessions in which the ordinance has its second reading.

(b) An ordinance shall not take effect until fifteen (15) days after the first passage thereof, except in case of an emergency ordinance. An emergency ordinance may become effective upon the day of its final passage; provided, that it shall contain the statement that an emergency exists and shall specify the distinct facts and reasons constituting such an emergency.[4]

There is no issue about the City Commission's compliance with the requirements of this statute in the adoption of the rezoning ordinance. Mr. Gillham essentially argues that the public hearing must be held prior to the first reading. We find no basis in the statutes to support this reading.

The City Commission complied with both Tenn. Code Ann. §13-7-203(a) and § 6-20-215(a). We find no merit to Mr. Gillham's argument that the procedures used were deficient. As the trial court stated, that argument seems to equate passage with enactment. The statutes clearly differentiate between the two.

---

[4]Mt. Pleasant's Charter §6-20-215 mirrors Tenn. Code Ann. §6-20-215.

The meanings of sections 13-7-203(a) and 6-20-215 are clear and unambiguous. We therefore affirm the trial court's judgment that section 13-7-203(a) does not require a public hearing before the first reading of a zoning application and hold that the City Commission followed the proper procedure in enacting Ordinance 2010-906.

## VI. CONFLICTS OF INTEREST

Mr. Gillham next argues Mayor Hendrix and Mr. Colvett had conflicts of interest that should have prevented them from voting on Ordinance 2010-906. Following the public hearing that was held on February 16, 2010, Mr. Gillham's lawyer objected to the involvement of the City and of the MPPS in advocating for a "private rezoning application." As Mr. Gillham asserts in his complaint, Mr. Gillham's lawyer "advised the Commission that both HENDRIX and COLVETT had an incurable direct conflict of interest as a result of the improper and illegal involvement of the CITY's acting City Manager/Finance Director and the General Manager of the Power System in the matter."

The only basis for Mr. Gillham's allegations of conflict of interest is the fact that both Mayor Hendrix and Commissioner Colvett had public duties in their roles with the power system. In other words, Mr. Gillham has never claimed that either the mayor or the commissioner had any personal or private interest in the outcome of the rezoning procedure. There is no allegation that either man could possibly profit personally from the rezoning. Neither is alleged to have any ownership or other interest in the two companies that sought the change in zoning.

The Tennessee Attorney General has issued an opinion addressing a member of the General Assembly's conflict of interest, and has stated:

> Broadly speaking, a conflict of interest may be defined as the use of a public office to advance private interests at the expense of the public interest. More specifically, a conflict of interest has been said to exist [ ] whenever a legislator or other public official has placed himself in a position where, for some advantage gained or to be gained for himself, he finds it difficult if not impossible to devote himself with complete energy, loyalty and singleness of purpose to the general public interest. The advantage that he seeks is something over and above the salary, the experience, the chance to serve the people, and the public esteem that he gains from public office.

Tenn. Op. Att'y Gen. No. 85-036, 1985 WL 193578 (Tenn. A.G. Feb. 14, 1985) (citations omitted). The allegations by Mr. Gillham do not in any way implicate the kinds of interests generally considered as a potential source of conflicts with duties of public officials.

-11-

Instead, Mr. Gillham's objections arise from the connection Mayor Hendrix and Commissioner Colvett have with the local government's electric power system. The Mount Pleasant Power System is a branch of, or an entity of, the City. Mr. Gillham focuses on the fact that Mayor Hendrix sits on the board of the MPPS and that Mr. Colvett is employed by the MPPS. We see no conflict of interest arising from public duties to the City and all its entities. Indeed, a mayor or commission member must generally consider the needs and welfare of the city as a whole.

The Tennessee General Assembly has recognized the possibility that a city official's personal interests, specifically employment with the city, may sometimes be perceived as creating a potential conflict with his or her public duties. An example might occur when a commissioner who is also a municipal employee is called upon to vote on proposed salary and pay plans. Tennessee Code Annotated §6-20-205(b)(1) provides guidance in that situation.

Any member of a local governing body of a county or a municipality who is also an employee of such county or municipality may vote on matters in which such member has a conflict of interest if the member informs the governing body immediately prior to the vote as follows:

"Because I am an employee of (name of governmental unit), I have a conflict of interest in the proposal about to be voted. However, I declare that my argument and my vote answer only to my conscience and to my obligation to my constituents and the citizens this body represents."

After Mr. Gillham's attorney publicly indicated that Mayor Hendrix and Mr. Colvett had conflicts of interest, both read the conflict disclosure as set out in Tenn. Code Ann. §6-20-205 following the public hearing, before voting in favor of the ordinance.

Mr. Gillham's primary objection seems to be with the position papers or memoranda furnished to the City Commission and prepared by Mr. Church, the General Manager of the Mount Pleasant Power System (addressing the effects on the MPPS customers if TAP and/or Smelter Services left Mt. Pleasant) and by Debbie McMullin, the City Manager and Finance Director (providing information on the contributions of TAP and Smelter Services to the City's tax base and utility budgets). Mr. Gillham argues that both MPPS and the City "illegally and improperly became an advocate for and therefore identified with the TAP/SS rezoning application." Nothing in the memoranda suggests this conclusion, and the language of both is contrary to this assertion.[5]

We construe the actions of Mayor Hendrix and Mr. Colvett in considering the memoranda furnished to all members of the Commission as simply receiving information relevant to their duties to vote for or against the rezoning application. As mayor and members of the city commission, they were obligated to make a decision in the interest of the city as they saw that interest. To perform their duties, they should consider all information relevant to that interest.

---

[5]Even if Mr. Gillham's characterizations were accurate, there is nothing inherently wrong or illegal about municipal departments or officials taking positions on issues of public interest.

Neither Mayor Hendrix nor Mr. Colvett had a conflict of interest in the rezoning application of TAP and Smelter Services. They still read into the record the language of Tenn. Code Ann. §6-20-205(b)(1) prior to voting on the ordinance, at which point each declared his "vote answer[ed] only to [his] conscience and to [his] obligation to [his] constituents and the citizens this body represents." We affirm the trial court's holding that Mayor Hendrix's vote and Mr. Colvett's vote in favor of Ordinance 2010-906 did not render the process invalid.

## VII. JUDICIAL REVIEW OF ZONING ORDINANCES

Mr. Gillham's final argument is that the trial court erred in rejecting his argument that the City Commission had no rational basis for enacting Ordinance 2010-906.[6] In rejecting Mr. Gillham's argument, the trial court explained it "may not 'second guess' the chief legislative body of the City of Mt. Pleasant in deciding whether or not the City's decision on rezoning was 'rational' or otherwise appropriate [because] [s]uch decisions are not within the jurisdiction of the judicial branch of government."

"When a municipal governing body acts under its delegated police powers either to adopt or amend a zoning ordinance, it acts in a legislative capacity and the scope of judicial review of such action is quite restricted." *Fallin v. Knox County Bd. of Comm'rs*, 656 S.W.2d 338, 342 (Tenn. 1983). As the *Fallin* court explained:

> Zoning is a legislative matter, and, as a general proposition, the exercise of the zoning power should not be subjected to judicial interference unless clearly necessary. In enacting or amending zoning legislation, the local authorities are vested with broad discretion and, in cases where the validity of a zoning ordinance is fairly debatable, the court cannot substitute its judgment for that of the legislative authority. If there is a rational or justifiable basis for the enactment and it does not violate any state statute or positive constitutional guaranty, the wisdom of the zoning regulation is a matter exclusively for legislative determination.
>
> In accordance with these principles, it has been stated that the courts should not interfere with the exercise of the zoning power and hold a zoning enactment

---

[6]Mr. Gillham's argument is that TAP and Smelter Services submitted a similar rezoning application in 2007 that the City Commission denied; the state of science and technology relating to industrial landfills has not materially advanced since that time; and therefore the City Commission had no rational basis for granting the application in 2010.

-14-

invalid, unless the enactment, in whole or in relation to any particular property, is shown to be clearly arbitrary, capricious, or unreasonable, having no substantial relation to the public health, safety, or welfare, or is plainly contrary to the zoning laws. 82 Am. Jur. 2d *Zoning and Planning* § 338 (1976) at 913–14.

*Fallin*, 656 S.W.2d at 342-43; *see Gann v. City of Chattanooga*, 2008 WL 4415583, at \*2-3 (Tenn. Ct. App. Sept. 30, 2008) (court cannot substitute its judgment for that of the legislative authority where validity of zoning ordinance is fairly debatable); *Citizens for a Better Johnson City v. City of Johnson City, Tennessee*, 2001 WL 766997, at \*4 (Tenn. Ct. App. July 10, 2001) (zoning decision has rational basis if "any possible reason can be conceived to justify it").

In this appeal we are not called upon, and have no authority, to decide whether or not we agree with the City Commission's decision to grant the rezoning application. Having already determined that TAP and Smelter Services complied with the procedural requirements in submitting their application to the Planning Commission, and that the City Commission complied with the procedural requirements in granting the application, we have no authority on which to set aside the City Commission's decision so long as it is not clearly arbitrary, capricious, or unreasonable.

There is nothing in Mr. Gillham's complaint that, if the facts alleged were proved, would establish that the decision to rezone the 95.2 acres at issue to M-3 Special Industrial was clearly arbitrary, capricious, or unreasonable. Mr. Gillham's complaint did not allege any facts that would lead to the legal conclusion that no possible reason can be conceived to justify the rezoning. We therefore affirm the trial court's ruling on this issue.

## VIII. CONCLUSION

For the reasons set forth above, we conclude that Mr. Gillham can prove no set of facts in support of his claims that would entitle him to relief. Accordingly, we affirm the trial court's judgment in all respects. Costs of this appeal shall be taxed to Fred H. Gillham, for which execution shall issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE